# PATTON v. DIXON.

## (*Jackson.* June 19, 1900.)

1. LIMITATIONS, STATUTE OF. *Adverse possession for seven years under decree.*

Adverse possession of land held continuously for seven years under a decree confirming a chancery sale thereof and purporting to vest title in fee in the possessor, operates to extinguish all outstanding interests not protected by disability of the owner, and to invest the possessor with title to the land in fee simple. Such decree constitutes color of title under the first section of the Act of 1819. (*Post, pp. 98–100.*)

Code construed: § 4456 (S.); § 3459 (M. & V.); § 2763 (T. & S.).

Cases cited: Thurston v. University, 4 Lea, 519; Duncan v. Gibbs, 1 Yer., 256; Johnson v. Britt, 9 Heis., 756.

2. SAME. *Concurrent and successive disabilities.*

Concurrent disabilities are available to prevent the running of the statutes of limitation only when they are united in one and the same person. Concurrent disabilities existing in different persons, or successive disabilities, whether of the same or different persons, are never available. (*Post, pp. 100–103.*)

Code construed: § 4450 (S.); § 3453 (M. & V.); § 2759 (T. & S.).

3. SAME. *Same. Example.*

Hence an infant heir may be divested of his title by seven years' adverse possession of his lands, if continued as much as three years after ancestor's death, although both he and his ancestor were under disability when the adverse possession began, and continued under same ever thereafter. The infant heir succeeds to the ancestor's right of action in such case, and as to it his disability is not concurrent, but successive, and, therefore, not available. (*Post, pp. 100–103.*)

Cases cited: Guion v. Anderson, 8 Hum., 298; Weissinger v. Murphy, 2 Head, 674; King v. Nutall, 7 Bax., 227; Burns v. Headrick, 85 Tenn., 102; Alvis v. Oglesby, 87 Tenn., 172; Gross v. Disney, 95 Tenn., 596.

21 P—7

---

Patton v. Dixon.

---

4. CHANCERY PLEADING AND PRACTICE. *Amendment of bill at hearing allowable.*

The statutes and practice are very liberal in permitting amendments of pleadings, to reach the merits. Hence it is allowable to permit a complainant to amend his bill at the hearing by changing a material date so as to conform to the evidence. (*Post, p. 103.*)

Code construed: §§ 4587, 6145 (S.); §§ 3578, 5078 (M. & V.); §§ 2867, 4335 (T. & S.).

Case cited: Hogan v. McFarland, 6 Bax., 104.

5. COSTS. *Adjudged against successful appellant, when.*

Costs are adjudged against the complainant and appellant who has been successful in his suit to remove a cloud prosecuted against an infant who has no property. (*Post, pp. 103, 104.*)

6. GUARDIAN AD LITEM. *Fee of, not taxed against successful adversary.*

The fee of a guardian *ad litem* cannot be taxed as costs or otherwise against the successful opposite party, although the ward may be utterly without funds to pay it. Attorneys are required to serve without compensation in such cases. (*Post, pp. 104–106.*)

Case cited and approved: House v. Whitis, 5 Bax., 690.

Cited and disapproved: Yourie v. Nelson, 1 Tenn. Ch., 617.

---

FROM SHELBY.

---

Appeal from Chancery Court of Shelby County. JOHN L. T. SNEED, Ch.

C. W. HEISKELL for Patton.

L. T. M. CANADA for Dixon.

WILKES, J. This is a bill to remove clouds from the title of three and one-half acres of land lying

Patton *v.* Dixon.

on the east side of College Street, in Memphis. A *pro confesso* was taken against all the defendants except Beulah Scott Gracy, and relief granted as to all defendants except her. She is a minor, and represented by guardian *ad litem*, and insists she has an interest in the land in controversy, through descent from her deceased mother, Lou Ella Gracy.

The Chancellor found in her favor, and complainant has appealed from that much of the decree of the Court below. The complainant's title is based upon a sale made by the Chancery Court at Memphis on the 28th day of April, 1883, in the cause of the *State* v. *A. J. Montgomery et al.* Complainant was a creditor of Montgomery, and the land was sold as his property after his death, which occurred in 1881. One of his children was Nannie Smith, who died before her father, in 1874 or 1875, leaving her daughter, Lou Ella, as her only heir. Lou Ella intermarried with Gracy, and was his wife when this land in controversy was sold and adverse possession taken of it, in 1884. She died in 1887, and her husband survived her only a few months, dying in the same year. Lou Ella Gracy was not made a party to the bill under which the land was sold, and, being one of the heirs and representing an interest in his estate, it is said the title to her share and interest in the land is defective, as no one representing it was

before the Court. Complainant filed his bill in 1899 to remove this cloud from his title, and claims that it is perfected by the statute of limitation. His contention is that the sale was confirmed to him in 1883, and title was at that time vested in him by decree; that he went into possession in 1884, and has had continuous adverse possession since, with adverse claim; that he paid all the purchase money and fully complied with the terms of sale. The defendant's contention for the minor is that, being under disability no statute ran against her.

We are of opinion that a decree confirming a chancery sale and vesting title in the purchaser is color of title under the provisions of the statute, and adverse possession thereunder puts into operation the statute of limitation, and, if continued for seven years, gives title under the first section of the Act of 1819. Shannon, § 4456.

The legal title, right of entry, and actual possession all are united in the purchaser in this case. *Thurston* v. *The University,* 4 Lea, 519; *Duncan* v. *Gibbs,* 1 Yer., 256; *Johnson* v. *Britt,* 9 Heis., 756.

The question of difficulty in this case is, Has the statute run against the minor, Beulah Scott Gracy?

It is insisted that her mother was under the disability of coverture in 1884, when the adverse possession began, and so continued until 1887, when

she died, and that at the time of her death the daughter, Beulah Scott, was a minor, and hence there had been no person obligated to sue, and hence no running of the statute. It is said that the facts present a case of concurrent, and not of successive, disabilities. and hence falls within the provisions of the statute (Shannon, § 4450), which is as follows:

"No person can avail himself of a disability unless it existed when his right of action accrued, but when two or more disabilities then exist the limitation does not attach until all are removed."

The argument is that the minor's disability existed when her right of action accrued, at the death of the mother, who was a married woman, and hence the two disabilities existed at the same time, and may, therefore, be called concurrent. But we think this is a misapplication of the statute, and the disabilities that are referred to as concurrent, or cumulative, are the disabilities of one and the same person, and not those of different persons. To illustrate, a minor may be at the same time a married woman, and thus have concurrent disabilities. She, on the other hand, may be under the disability of infancy when the adverse possession began, and may, while her minority continues, be married, and thus the disabilities may be cumulative.

But in this case the minor had no interest in

the land when the adverse possession began. That interest at that time was wholly vested in the mother, who had no other disability but that of coverture.

The statute then began to run against the mother. She and her husband had a joint right of action. If she had survived him, she would have had a separate right of action after discoverture.

In the former case, seven years would have barred the joint action; in the latter,. three years after discoverture would have barred the separate action of the wife, provided seven years had elapsed from the original adverse possession.

The minor could not recover, except in the right of the mother. She had no independent interest or right of action when the adverse possession began. When the mother died her right of action only passed to the daughter, and that was extinguished after the lapse of seven years from the adverse possession. Unquestionably this is correct if the bar of seven years had been complete when the mother died, as her only right of action under that state of facts would have been extinguished, and there would have been none to survive to the daughter.

But, whether the bar was complete when the mother died or not, the statute had commenced to run, and was not arrested by her death. The minor had no separate right of action, but only

such as might survive to her from her mother. This view of the law is, we think, sustained by the cases of *Guion* v. *Anderson,* 8 Hum., 298; *Weisinger* v. *Murphy,* 2 Head, 674; *King* v. *Nutall,* 7 Bax., 227; *Burns* v. *Headrick,* 85 Tenn., 102; *Alvis* v. *Oglesby,* 3 Pickle, 172; *Gross* v. *Disney,* 11 Pickle, 596.

It is said that the Court erred in allowing an amendment of the pleadings at the hearing of the case on its merits. It appears that under the allegation of the bill, the complainant went into adverse possession of the land in 1889, while the proof shows that his adverse possession began in 1884. The Court allowed an amendment of the bill to show that adverse possession began in 1884, and not in 1889, as alleged in the bill. We are of opinion that there is no error in this. The allegation in the bill was, perhaps, a mere inadvertence or clerical error of counsel, and the actual facts appeared from the proof, and defendant was not taken by surprise, nor did she desire or apply for time to meet the case as presented by the amendment.

The statute and practice are very liberal in permitting amendments so as to reach the merits of each case. Shannon, §§ 4587, 6145; *Hogan* v. *McFarland,* 6 Bax., 104; Gibson's Suits in Chancery, Sec. 427; 1 Enc. Pleading and Practice, p. 578.

We are of opinion that the defendant has no

right or title in this land that she can enforce, and that the decree of the Chancellor should, as to her, be reversed, and complainant's title perfected. The costs will be paid by the appellant, it not appearing that the minor has any estate that can be reached for that purpose.

After the opinion in this case was handed down, the guardian *ad litem* and solicitor presented a petition asking that a reasonable fee for his services be taxed in the bill of costs against complainant, along with the other costs of the cause, and that this Court fix the amount. This application is upon the theory that the guardian *ad litem* was appointed by the Court below to defend the interest of the minor, and the proceeding against the minor was necessary and inured to the benefit of the complainant by enabling him to clear up his title to the lots, and there is no fund under control of the Court belonging to the minor out of which the Court can direct the fee to be paid.

The exact question presented in this case was presented before Chancellor Cooper in the case of *Carter* v. *Montgomery,* reported in 2d Tenn. Ch. Reports, 455, and decided at the October term, 1875. The learned Chancellor held that in a case similar to this, when the proceeding was to perfect title, and the infant who was a necessary party had no fund out of which to pay a fee

to the guardian *ad litem,* it might be taxed as costs to the party seeking to clear up his title and succeeding therein. The learned Chancellor followed his own ruling in the case of *Yourie* v. *Nelson,* 1 Tenn. Ch., 617, and cited, also, the cases of *Gott* v. *Cook,* 7 Paige, 544; *Frozer* v. *Thompson,* 4 DeG. & J., 663; *Walker* v. *Hallett,* 1 Ala., 379; *Sutphen* v. *Fowler,* 9 Paige, 280. The amount taxed by the Chancellor in that case was $20.

The case of *House* v. *Whitis,* 5 Baxter, 690, was determined at the December term, 1875, of this Court, and involved the same question, upon facts substantially the same. In that case the application was to have the fee paid out of a fund going to the party adverse to the infant, and upon grounds the same in reason as in the case of *Carter* v. *Montgomery,* to wit, that the proceeding resulted in benefit to the party; that the infant was a necessary party and had no fund out of which the fee could be paid, but the Court held that the effect of an order to pay a fee would be to require the adversary to pay it, and that could not be permitted under the law. It was held that the Court had a right to command services of counsel for persons unable to pay in civil as well as criminal cases, and when a lawyer takes his license he takes it burdened with these honorary obligations, and must perform the services when called upon, even

Patton *v.* Dixon.

though he receive no compensation. In the absence of statutory provision, this is the ordinary rule. 10 Enc. Pleading and Practice, p. 686.

This is decisive of this application, and, while the minor in this case was a · necessary party, and the defense rested alone upon the guardian *ad litem,* and was very ably made and with much care and learning, we see no ground upon which we can tax a fee for him against the complainant, and he can only rely upon the approval of his conscience here and his reward hereafter when the final judgment is passed for his compensation. The petition is denied.