WILLIAM AND RICHARD EDWARD JONES *et al. v.* COAL
CREEK MINING & MANUFACTURING Co. *et al.*

(*Knoxville.* September Term, 1915).

1. **LIMITATION OF ACTIONS.** Disabilities. Nonresidence.
Removal of disabilities. Effect.

Under Shannon's Code, sec. 4448, providing that persons beyond
the limits of the United States and the territories thereof
when the cause of action accrued shall be excepted from the
operation of the statute of limitations, nonresident plaintiffs
cannot maintain their action based upon a cumulative disability,
but can rely only upon their own disability, and not upon a
disability of their ancestor in interest upon whose death pri-
mary disability ceased. (*Post, pp.* 165-167.)

Cases cited and approved:   Guion v. Anderson, 27 Tenn., 298;
Weisinger v. Murphy, 39 Tenn., 675;  Patton v. Dixon, 105
Tenn., 97.

Code cited and construed:   Sec. 4448 (S.).

2. **LIMITATION OF ACTIONS.** Disabilities. Nonresidence.
Exceptions.

Under Shannon's Code, sec. 4448, providing that persons beyond
the limits of the United States and the territories thereof
when the cause of action accrued shall be excepted from the
operation of the statute of limitations, no change of citizen-
ship for removal of the disability is required; but if the
persons excepted by the statute at any time come within the
limits of the United States or its territories, they are no longer
protected by the statute. (*Post, pp.* 167, 168.)

Case cited and approved:   Bond v. Jay, 7 Cranch., 350.

3. **LIMITATION OF ACTIONS.** Exceptions.  Burden of proof.

While the burden of proof is on the party asserting the bar
of the statute of limitations to show that his opponent is barred,
when such showing is made, then the burden shifts to the

other party to show that he has been at all times within an exception of the statute. (*Post, pp.* 168, 169.)

Cases cited and approved: Sou. Coal & Iron Co. v. Schwoon, 124 Tenn., 176; Shropshire v. Shropshire, 15 Tenn., 167; Apperson v. Pattison, 79 Tenn., 484; Alvis v. Oglesby, 87 Tenn., 182.

4. **LIMITATION OF ACTIONS. Nonresidence of plaintiff. Evidence.**

In an action in which the two plaintiff trustees relied on the exception of absence from the country to save their cause of action from the statute of limitations, evidence *held* not to show that their several visits to the United States were never concurrent, so that they failed to bring themselves within the exception of the statute. (*Post, pp.* 169, 170.)

5. **LIMITATION OF ACTIONS. Exceptions. Repeal of excepting statutes. Effect. Validity.**

Acts 1901, ch. 15, abolishing all exceptions of statutes limiting commencements of suits and actions in favor of persons beyond the limits of the United States and the territories thereof, removes the exception of Shannon's Code, sec. 4448, providing that persons beyond the limits of the United States and the territories thereof when the cause of action accrued shall be excepted from the operation of the statute of limitations, and is valid, since it does not cut off all rights of action immediately, but gives to persons formerly under disability the full period of the statute of limitations after the removal of the disability in which to bring action. (*Post, pp.* 170-173.)

Acts cited and construed: Acts 1901, ch. 15.

Cases cited and approved: McGahey v. State of Virginia et al., 135 U. S., 662; Lewis v. Lewis, 7 How. (U. S.), 776.

Case cited and distinguished: Slover v. Union Bank, 115 Tenn., 347.

6. **CONSTITUTIONAL LAW. Statutes. Construction in favor of validity.**

A statute destroying the exceptions to the statute of limitations will be so construed that it may be held constitutional, if this

can be done reasonably, in order to preserve the validity of
the statute. (*Post, pp.* 173, 174.)

7. **CONSTITUTIONAL LAW. Limitation of actions. Obligation
of contracts. Change of statute.**
The statute of limitations does not impair the obligation of
contracts, but takes away the remedy only, and so may affect
the remedy on contracts or rights made or acquired before,
as well as those made after, its passage, provided that as
to contracts made before its passage it must give the parties
a reasonable time in which to sue. (*Post, pp.* 174, 175.)

8. **LIMITATION OF ACTIONS. Time of bringing suit. Effect.**
Where plaintiffs were under the disability of nonresidence, and
therefore not subject to the statute of limitations, and their
exception was removed by statute, within two years of which
time they brought their action, their cause is saved, so as to
prevent subsequent acquisition of title by adverse possession
against them, in spite of the fact that it is subsequently dis-
missed, when a new action is brought within one year from
such dismissal. (*Post, pp.* 175, 176.)

9. **EJECTMENT. Actions. Pleadings. Sufficiency.**
Pleadings in ejectment were sufficient, where title was averred
upon one hand and denied upon the other, regardless of failure
to plead details. (*Post, pp.* 176-178.)
Acts cited and construed: Acts 1819, ch. 28; Acts 1851-52, ch.
152.
Cases cited and distinguished: Coal & Iron Co. v. Schwoon,
124 Tenn., 176; Drewery et al. v. Nelms, 132 Tenn., 254;
Graham's Heirs v. Nelson, 24 Tenn., 605; Gross v. Disney,
95 Tenn., 592.
Code cited and construed: Secs. 4970, 4980 (S.).

10. **ADVERSE POSSESSION. Color of title. Deeds. Sufficiency.**
The deeds relied upon by the defendants as color of title to
property in question in ejectment were sufficient to show color
of title, since when considered with prior grants they pur-

ported to convey a fee, though in fact, the deeds in question were but quitclaim deeds. (*Post, pp.* 178-181.)

Cases cited and distinguished: Briar Hill Collieries v. Gernt, 131 Tenn., 542; Coal & Iron Co. v. Schwoon, 124 Tenn., 176.

11. **ADVERSE POSSESSION.** Possession of portion of tract. Effect.

Where one seeking to establish title by adverse possession shows possession of a portion of the tract under color of title, his possession extends *constructively to the whole tract.* (Post, *pp.* 181, 182.)

---

FROM ANDERSON.

---

Appeal from the Chancery Court of Anderson County.—HUGH G. KYLE, Chancellor.

LUCKY & ANDREWS and SAWYER & UNDERWOOD, for appellants.

SCOTT & CHANDLER and WRIGHT & JONES, for appellees.

MR. JUSTICE FANCHER delivered the opinion of the Court.

This bill was filed October 5, 1910, by the complainants, who are citizens and residents of Great Britain, against the Coal Creek Mining & Manufacturing Company and the Poplar Creek Coal & Iron Company, Tennessee corporations, and is an action of ejectment for the purpose of recovering 5,000 acres of land in Anderson county originally granted by the State to Samuel C. Young by grant No. 22,382, issued February

9, 1839.   Complainants deraign title from the grant by regular chain of conveyances and muniments of title.   They hold as trustees under the will of Samuel Roberts, dated September 27, 1884, and who died September 25, 1885.   He purchased February 4, 1856. The defendants claim title through three inferior grants, and rely upon the statute of limitations to perfect their title.

The Coal Creek Mining & Manufacturing Company claims and deraigns title to grant No. 40,475, issued to Wiley & McEwen December 19, 1873.   This grant interlaps on the Samuel C. Young grant partly, covering a few hundred acres af the Young tract.   The Coal Creek Company also claims a 200-acre tract which was granted to Alex Galbreath by grant No. 23,134, issued November 5, 1839.   The record shows an agreement between the parties that it acquired whatever title there may be to this grant by regular conveyances.

The Poplar Creek Coal & Iron Company claims and deraigns title to grant No. 26,058 to William Bailey, issued January 29, 1848, and this tract covers all of the Young grant, except that which is covered by the Wiley and McEwen grant, except a small piece of about ten acres on the extreme east of that tract.

The Alex Galbreath grant claimed by the Coal Creek Company lies almost wholly within the William Bailey grant claimed by the Poplar Creek Coal Company, and only about one-third of this Galbreath tract lies within complainants' boundary.

It is conceded upon the record that defendant Coal Creek Company has had actual and continuous pos-

session for a number of years within complainants' boundary and on the interlap with the Wiley and Mc-Ewen grant, but the exact date when this possession began is in some doubt. The first definite time established in the record of the beginning of this adverse holding is about December 10, 1888, when a lease on the Wiley and McEwen tract of land was executed by the Wiley Coal Company and the Coal Creek Mining & Manufacturing Company jointly to one Jerry Bunch, who thereupon moved upon the land, and from about that date a continuous possession is shown by actual inclosures erected by Jerry Bunch and kept up continuously by him and other tenants of defendant to the present time. His inclosures amounted to about twenty-five acres. One John Bunch also held possession of inclosures of about twelve to fifteen acres within complainants' boundary. These inclosures were situated partly within the William Bailey tract and partly within the Wiley and McEwen tract; the common line dividing those two tracts passing through his (John Bunch's) inclosures. He stated that he went upon the land and held possession under a lease from Hornsby, a grantor of defendant, and later by agreement with Cox, who was a joint agent of the two defendants, and while he stated that he commenced to hold possession about 1884, he shows that he lived there about two years before Jerry Bunch made his inclosures, and he also shows that a part of the time he held for one Byrd, who claimed the land. He said that about fifteen years ago Byrd bluffed him into taking a lease from him, and that he held for Byrd for

two years, until the lawsuit was settled between Byrd and the defendants. In another statement he said that he began his clearing in 1889, and that he commenced first under Byrd, and that after the suit was settled he took the first lease under the Coal Creek Company. Since Cox has been agent, he has held for both the Coal Creek Company and the Poplar Creek Company, presumably holding on one side the line for one and on the other side for the other. Cox has been joint agent for these companies since 1897.

So we are unable to determine that the defendant Coal Creek Company's possession began before the latter part of 1888, or the first part of 1889, and during the first part of this holding it appears that there has been some adverse claim and possession of Byrd. It is not sufficiently clear that there was seven years' exclusive possession by the Coal Creek Company before John Bunch held for Byrd, and it is not satisfactorily proven that the exclusive possession for the Coal Creek Company since the settlement of the suit with Byrd has been more than fifteen years. The Poplar Creek Company and its predecessors in title have been in actual possession of the William Bailey tract and within complainants' boundary by actual inclosures from March, 1884, and this has probably been continuous to the present time.

Complainants contend that they are not affected by this adverse possession, because William and Richard Edward Jones and Samuel Roberts, under whom they claim, have been residents and citizens of Great Britain during all the time that possession has been held

by defendants, and that they fall within that provision of our statute which excepts from the operation of the limitation persons ''beyond the limits of the United States and the territories thereof,'' and providing that:

''Such persons, or their representatives and privies, as the case may be, may commence the action, after the removal of such disability, within the time of limitation for the particular cause of action, unless it exceeds three years, and in that case within three years from the removal of such disability.'' Shannon's Code, section 4448.

The bill avers that Samuel Roberts was a citizen and resident of Wales, Great Britain, and a nonresident of the State of Tennessee, except for a short period just before the Civil War, and that he remained in the State of Tennessee or within the United States until about the year 1868. Richard Edward Jones testified that Samuel Roberts was throughout his whole life a citizen of Great Britain, and never returned to the United States after the year 1870. Richard Edward Jones and his co-complainant, William Jones, are citizens and residents of Great Britain, but have both visited in this country. Richard Edward Jones stated that William Jones has lived at Sutton Lodge, Shrewsbury, in the county of Salop, in England, continuously since the year 1880, and that he, Richard Edward Jones, has lived at Oakley Grange, Shrewsbury, in the county of Salop, in England, continuously since the year 1902. He stated that he was in the United States of America upon several occasions between the years

1884 and 1892, but has not been in this country since 1892. He was paying visits in various places entirely upon pleasure, and was not in the State of Tennessee. He stated that his co-trustee, William Jones, was in the United States of America from June, 1857, until November, 1864, and that he made a second visit to the United States in April, 1890, returning to England in June of the same year, and had not been in the United States since the year 1890. His statements conflict as to when William Jones was in the United States, first saying that he had lived in England continuously since 1880, and stating in another part of his deposition that he visited the United States in 1890.

As to the Poplar Creek Company, the Patterson possession held by it and its vendors was held from the year 1884. Samuel Roberts, the ancestor, did not die until late in the autumn of 1885. The disability of complainants will not avail them as to grant No. 26,058, because the possession on it began before the death of Samuel Roberts. His disability ceased and the statute began to run after his death. It is well settled that no cumulative disability will prevent the bar. *Guion* v. *Anderson*, 8 Humph., 298, 326; *Weisinger* v. *Murphy*, 2 Head, 675; *Patton* v. *Dixon*, 105 Tenn., 97, 58 S. W., 299.

But if witnesses were mistaken in saying the possession for the Poplar Creek Coal Company began before the death of Samuel Roberts, did the statute run by reason of the visits of William and Richard

Edward Jones to the United States after they became entitled to sue?

Our statute (Shannon's Code, section 4448) as to persons beyond the limits of the United States and the territories thereof is not like some other statutes of a similar nature which require citizenship in this country in order to bring a former nonresident citizen within the provisions of the law. *Bond* v. *Jay,* 7 Cranch, 350, 3 L. Ed., 267. Our act does not require a change of citizenship for the removal of this disability. The exception in our statute is as to persons beyond the limits of the United States and the territories thereof, and if they come within the limits of the United States or its territories they are no longer protected by its provisions.

The proof shows that Samuel Roberts died September 14, 1885, after having executed a last will and testament, under which he devised the property in question to William and Richard Edward Jones, the complainants, and their heirs, as trustees to hold the same on behalf of the several shareholders therein and with full power to manage and sell the lands.

It is insisted by complainants that William and Richard Edward Jones are joint trustees, and that before adverse possession could operate against them they would have to both come to the United States at the same time. It is not certain upon this proof when they were in the United States, but Richard Edward Jones was here several times between 1884 and 1892, paying visits in various places, and in one part of his deposition he stated that William Jones visited the United

States in April, 1890, and retuned to England in June of the same year.

The complainants are undertaking to set up a disability, and it is incumbent upon them to make out the exceptions. Their place of residence at any particular time is peculiarly within their knowledge. While the burden is on the plaintiff to prove facts necessary to create a bar (*Sou. Coal & Iron Co.* v. *Schwoon,* 124 Tenn., 176, 135 S. W., 785), yet the burden shifts when the bar is once made out, to the defendant to prove continuing facts necessary, not only to show that he comes within the exception to the statute, but that he remained continuously within such exception for a sufficient length of time as to bring him within the law (*Shropshire* v. *Shropshire,* 7 Yer., 167; *Apperson* v. *Pattison,* 11 Lea, 484; *Alvis* v. *Oglesby,* 87 Tenn., 182, 10 S. W., 313).

Complainants, therefore, not having shown satisfactorily to the court that they were not both within the United States during the time that this adverse possession existed on the land, they must fail in their defense on that question as to the defendant Poplar Creek Coal & Iron Company; it being conclusively shown to have maintained continuous adverse possession since the year 1890, when William Jones was last in this country. Conceding that complainants were trustees in such sense that neither one could convey the land without the other, and that therefore a right could not be acquired against them by prescription or under the statute of limitations unless both should fall within the provisions of the law at the same time,

yet it does not appear that only one of them was here at the time of these visits. Upon the hypothesis assumed, it should have appeared affirmatively that one of these trustees was absent at all times from the United States.

However, this conclusion does not apply to the Coal Creek Mining & Manufacturing Company, because of the uncertainty of its exclusive possession prior to 1890, and it becomes necessary to inquire whether the adverse possession by it has become effective since that time.

The exception contained in our statute as to persons beyond the limits of the United States, as above quoted, was repealed by the legislature by its act of 1901 (chapter 15), which purports to abolish "all exceptions of statutes limiting the commencement of suits and actions in favor of persons beyond the limits of the United States and the territories thereof, and to repeal all laws providing for such exceptions." It is insisted by complainants that this is not a good and valid act, and is unconstitutional and void, especially if effective, as in this case, to extinguish or destroy a right of action which had already accrued. It is argued that the purpose of this act of 1901 was to absolutely and effectively as of that date cut off and destroy all right of action at that time existing in favor of any person beyond the limits of the United States and the territories thereof, unless, as provided in that act, action had already begun.

Complainants cite a number of authorities supporting the text stated in Cyc. vol. 8, p. 921, as follows:

"Statutes reducing or extending the time to bring an action and having a retrospective bearing on existing causes of action, but not affecting such as are already barred, are constitutional in that respect, if a reasonable time is allowed by them for bringing action before they go into operation; but they are held unconstitutional if no such reasonable time is allowed before they go into effect.  So, too, they will be held invalid if their effect is to remove a bar once actually gained, which is properly called a vested right."

It was held in the case of *McGahey* v. *State of Virginia et al.*, 135 U. S., 662, 10 Sup. Ct., 972, 34 L. Ed., 304, that a new and shorter statute of limitations is not necessarily unconstitutional as to actions which have accrued, if a reasonable time is given by it to bring such action.

In *Slover* v. *Union Bank,* 115 Tenn., 347, 89 S. W., 399, 1 L. R. A. (N. S.), 528, an act of the legislature of Tennessee was passed upon which provided that:

"No action shall be brought on any claim for usury after two years from the date of the payment of the debt upon which such claim for usury shall be based, provided this act shall not affect any litigation now pending."

At the time of the passage of that act, complainant Slover had a right of action against the Union Bank, but it was contended by the Union Bank in that case that by virtue of the act of 1903 his right of action was cut off.  The court said:

"In order to sustain the validity and constitutionality of this act, we are compelled to give it a prospec-

tive, instead of a retrospective, effect. In other words, if the right of action had accrued to any party before the passage of the act to recover for the usury paid, such right would not be affected afterward by the passage of the act, even though the suit had not been brought before its passage.

"The provision of the act that it shall not affect any litigation now pending is entirely nugatory and of no effect, since the legislature could not interfere with the rights of the claimant after suit commenced.

"Striking out this provision, therefore, we have an act which changes the statute from six . . . to two years without mentioning rights of action which had already accrued.

"We think, therefore, that the legislature must have meant to give the act a prospective, and not a retrospective, effect, and that rights of action which had accrued before the passage of the act were not cut off or affected by its operation, inasmuch as no time was given for the enforcement of such rights."

The act of 1901 now in question provided that it should not apply to any suits or actions then pending, as did the act of 1903, discussed in *Slover* v. *Union Bank,* and has such similarity in other respects that we think the same rules may apply, in construction, to the act now under consideration. We think the legislature must have intended a prospective effect and that rights of action existing before the passage of the act were not immediately cut off by its operation. But inasmuch as the act repealed all provisions of law making an exception to persons beyond the limits of

the United States and the territories thereof, a proper construction is that, while the exception was cut off as to all future actions, it did not cut off all existing rights of action immediately, but that, inasmuch as the statute of limitations had not then run against such persons, they would have the full period of the statute of limitations thereafter within which to bring suit, which in this case would be seven years. A statute of Illinois, repealing a saving clause in a former act of limitation, was given this construction by the supreme court of the United States, and it was held that the statute ran, against a nonresident who was previously within the exception, from the date of the repeal. *Lewis* v. *Lewis,* 7 How. (U. S.), 776, 12 L. Ed., 909.

While a statute of this nature is generally held invalid unless it gives a time within which to sue, in favor of any person affected who has a cause of action, yet the court will construe an act so it will be constitutional, if this can be done reasonably. Most of the cases on this question pertain to statutes of limitation enacted shortening the time within which to sue. This is a case where an exception is repealed, bringing the person who is beyond the United States and the territories thereof on the same footing as other persons generally. A right of this nature to sue cannot be suddenly cut off. To do so would be to destroy by one stroke a right which at the time of the enactment of the new law one possessed, and which was in the nature of a vested right. In order to save the statute the court will so apply its operation as to give the

person affected his right of action if this can be reasonably done; whereas one had a cause of action at the moment of the passage of the act by virtue of the saving clause before that time in effect, he is now, from its repeal, placed for the first time where a limitation will completely operate against him. He is then on the footing of other persons generally. By the old statute he had only three years from the removal of the disability within which to sue, but he cannot, after the repeal, be affected by the three-year provision because his three-year saving is gone. He is now faced with a seven-year statute which for the first time may unqualifiedly apply to him. The legislature might have given a reasonable time within which to sue by a person thus under disability short of the period of seven years by this repealing act, but he must have been given a reasonable time to assert his right. The legislature did not in terms give additional time after the repeal for any one to sue who might have a cause of action. Not having so done, the reasonable construction is that, having removed the disability, the person having the right of action was intended to have his full seven years within which to bring suit from the date of the repeal.

A statute of limitations, inasmuch as it takes away the remedy only and does not impair the obligation, may affect the remedy on contracts or rights made or acquired before as well as those made after the passage of it. But this has its qualifications, based on sound principle, that in order to give one his day in court he must be allowed a reasonable time after the

removal of his disability within which to sue. It was in consideration of this principle that our three-year saving provision was enacted.

We can see no other logical conclusion than that the repealing act of 1901 has not cut off the right, but has for the first time placed complainants where they must sue within seven years. So the statute began to operate against complainants from the year 1901. The complainants are given their day in court by this construction, after the removal of their disability, and the statute is a valid and constitutional repeal.

Complainants contend, however, that they instituted suit against defendant Coal Creek Mining & Manufacturing Company, September 10, 1903, which was dismissed without prejudice October 6, 1909, and that this action was brought within one year of such dismissal, which they are permitted to do under our statute, Shannon's Code, section 4446. An amendment to the original bill avers that suit was brought by complainants to recover the land set out and described in the present suit, and averring dismissal and new suit brought, as they now contend. The defendants answered, denying the averments of this amendment.

There is an agreement of counsel in the record as follows:

"It is further agreed that the original suit of *William and Richard Edward Jones, Trustees, etc., v. Coal Creek Mining & Manufacturing Company,* No. 1108, was filed September 10, 1903, and was dismissed without prejudice October 6, 1909."

This agreement does not state that the suit referred to was to recover this same tract of land, but it is between the same parties and describes the complainants as trustees. In view of the averments in the bill, we have no doubt but that counsel intended to agree that it was the same suit. At any rate, we shall so consider it, since agreements of this nature should be liberally construed in accordance with the true intention. We have no doubt but that the suit was for the same subject-matter, or else the agreement would have indicated to the contrary.

It therefore appears that there had been no effective adverse possession on grant No. 40,475, because complainants were within the exception to the statute prior to the act of 1901, repealing that exception, and their original suit was brought in 1903, saving their right since that time.

Complainants insist, further, that the defendants have not sufficiently set up their plea of the statute of limitations, and, upon the other hand, the defendants contend that the complainants have not sufficiently pleaded their immunity from the statute because of their residence beyond the limits of the United States and the territories thereof. It is unnecessary to determine whether these pleas, strictly speaking, were sufficient. The whole course of procedure in regard to ejectment suits is provided for in the statute of 1851-52 (chapter 152), embraced in Shannon's Code, section 4970 *et seq.*, simplifying in a systematic way the practice. By subsection 8 of that statute (Shannon's Code, section 4980) it is provided:

"The defendant may plead that he is not guilty of unlawfully withholding the premises claimed by the paintiff, and upon such plea may avail himself of all legal defenses."

The first clause of the act of 1819 not only cuts off the right of action against the owner in favor of one having had seven years' adverse possession of any lands in this State under registered assurance of title purporting to convey the estate in fee, but is thereby vested with a good and indefeasible title in fee to the land described in his assurance of title.

This court held in *Coal & Iron Company* v. *Schwoon,* 124 Tenn., 176, 135 S. W., 785, that so far as an issue is concerned as to an adverse possession which operates to transfer title, it is unnecessary to plead the statute of limitations.

In *Drewry et al.* v. *Nelms* (decided by this court at the last Jackson term), 132 Tenn. (5 Thomp.), 254, 177 S. W., 946, it was held that under our statute providing that in ejectment the defendant may plead that he is not guilty of withholding the premises claimed by the plaintiff, and under such plea may avail himself of all legal defenses, it is unnecessary to plead the statute of limitations on the effect of the statute to toll the title, arising in an ejectment suit, and that it follows necessarily an exception to the statute need not be pleaded.

The case of *Graham's Heirs* v. *Nelson,* 5 Humph., 605, was one where the statute of limitations (Acts 1819, ch. 28) did not apply because there was no ad-

133 Tenn. 12

verse claim to the party entitled to the land. A limitation was insisted on, notwithstanding there was no adverse possession, and it was held that the act of 1819 did not apply. It was also held that the pleas attempted to be made were not properly interposed, but this was rather incidentally remarked; the controlling question in the case being that there was no adverse possession. That case was decided in 1845, before the passage of our act of 1851-52, simplifying ejectment suits.

In *Gross* v. *Disney,* 95 Tenn., 592, 32 S. W., 632, it was held that a plaintiff who relies upon disability to avoid the effect of the statute of limitations must allege that it existed when the cause of action accrued, and also that it continued to the time when it would be an answer to the bar. The court in that case, however, did not discuss, and we assume that its attention was not called to, the provisions of our Code with respect to ejectment suits, and the effect of adverse possession in such cases. While the rule stated in *Gross* v. *Disney* is the general rule and applies in other actions, it has no application under our statutes to ejectment cases, where the holding of possession has the effect to toll the title. The pleadings of all parties in this suit are sufficient, since these matters all arise under the one question of title to the land, which is averred upon the one hand and denied upon the other.

It is next insisted by the complainants that the title papers of the defendants did not purport to convey the land covered by older and superior titles such as

the title of the complainants in this cause, and are not sufficient as colors of title. It is insisted that the deed of E. F. Wiley *et al.* to the Wiley Coal Company, conveying grant No. 40,475, only purports to convey all the right, title, and interest of every character and description, both legal and equitable, in whatsoever capacity they may hold the same, of the grantors, in an undivided one-half interest to said land. It is further insisted that the Wiley Coal Company, in selling to the Coal Creek Mining & Manufacturing Company, only undertakes to convey its right, title, and interest in said tract of land; also that in the deed of Chapman and wife to the Coal Creek Mining & Manufacturing Company it only purported to convey all the lands, premises, leaseholds, interest, mining rights, interest in coal and minerals, iron furnaces, coke ovens, and interests in lands situated in the counties of Roane, Anderson, and Morgan, State of Tennessee, which were heretofore owned by the Oakdale Iron, Coal & Transportation Company. It is insisted that at the time of the execution of these deeds the possessions had not run, and that the only title held by the parties was such as they owned under the Wiley and McEwen grant; that therefore these instruments would not be a color of title to that portion of the land covered by the superior title of complainants.

Complainants cite the case of *Briar Hill Collieries* v. *Gernt,* 131 Tenn. (4 Thomp.), 542, 175 S. W., 560. Upon looking to these conveyances, however, we are of opinion that they are not identical with the instrument under consideration in that case, but rather fall

within the principles announced in *Coal & Iron Company* v. *Schwoon*, 124 Tenn., 176, 135 S. W., 785, which were also approved in the *Gernt Case*. In the *Schwoon Case* it was held that all parts of the deed must be construed together, without regard to its mere formal divisions. The words "of quitclaim" in that deed were taken in connection with the will of W. C. Hill, and the tax deeds made to Hill, all of which, taken together, made out a good color of title. It was held that the tax deed should be taken in connection with the will, since the deed of the executor, the one under consideration, referred to the will and purported to convey the interest of his testator; that this necessarily referred to his title papers, both of which were duly registered in the county at the time the deed was made.

The deed of E. F. Wiley and others to the Wiley Coal Company, and of the Wiley Coal Company to the Coal Creek Mining & Manufacturing Company, referred to grant No. 40,476 to Edwin F. Wiley and J. F. McEwen. The latter deed also refers to the land as being the land conveyed to the party of the first part by E. F. Wiley *et al.* The grant to Wiley and McEwen purports to vest a one-half interest in the land to E. F. Wiley. The deed when read in connection with the grant, to which it refers, makes out a good color of title to an undivided one-half interest. In the deed of E. R. Chapman to the Coal Creek Mining & Manufacturing Company, all lands were conveyed that were heretofore owned by the Oakdale Coal, Iron & Transportation Company, and its title papers and

deeds referred to purport to convey the estate in fee to the other one-half interest, which makes color of title to that share.

Complainants finally say that in any event they should be decreed that part of the Alex Galbreath grant, No. 23,134, which lies within the boundary of the Samuel C. Young grant. Complainants take the position that, inasmuch as the Coal Creek Company claims under this grant and that there is no possession on the interlap of it and complainants' grant, that portion of the land would be unaffected by the statute of limitations. While it appears that the Coal Creek Company does have a deed to this particular 200-acre tract of land, and that a portion of it interlaps with complainants' boundary, yet that portion lies altogether within the boundary of grant No. 26,058 to William Bailey, claimed by the Poplar Creek Coal & Iron Company. There is no exclusion of this 200 acres in the muniments of title of the Poplar Creek Coal Company, and it had constructive possession to the extent of its boundary by virtue of its actual possession. There being no title in this grant No. 23,134, within the interlap, it being inferior to the Samuel C. Young grant, the only title necessary to be affected by the adverse possession was that of complainants, the superior title. When that was barred, all was barred.

For the reasons herein stated the complainants will recover all that part of grant No. 40,475, which interlaps with grant No. 22,382. The bill will be dismissed as to all the land lying within grant No. 26,058. If adverse possession by the Poplar Creek Company and

its vendors was interrupted by an adverse possession by John Bunch for Byrd, which is not clear on the record, and if it was not effective by failure of complainants, joint owners, to come within the United States, it has been effective on this tract since the repeal of the exception clause in 1901. The Poplar Creek Company was not sued until after more than seven years from this repeal. The possession was continuous during this seven years. Defendant Coal Creek Mining & Manufacturing Company will pay one-half, and complainants will pay the other half, of the costs of the cause.