CLIFFORD SCOTT and CALVIN VAN DOUGLAS, Plaintiffs in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

392 S.W.2d 681.

(*Knoxville,* September Term, 1964.)

Opinion filed June 14, 1965.

Petition for Rehearing Denied July 30, 1965.

Horace L. Smith, Jr., Chattanooga, for Clifford Scott.

H. H. Gearinger, Chattanooga, for Calvin Van Douglas.

George F. McCanless, Attorney General, Marne S. Matherne, Assistant Attorney General, for defendant in error.

MR. JUSTICE HOLMES. delivered the opinion of the Court.

The plaintiffs in error, hereinafter referred to as defendants, in docket Nos. 107219 and 107220 in the Criminal Court of Hamilton County, were convicted of robbery by use of a deadly weapon and sentenced to imprisonment in the State Penitentiary for a term of 50 years. They are represented by court-appointed counsel, who have duly perfected their appeal to this court and filed assignments of error.

The principal ground relied upon for a reversal of the convictions is stated in assignment of error number six, as follows:

"The Trial Court erred in denying the motions of the defendants for directed verdicts of acquittal based on motions timely made in which each defendant claimed denial of the right to access to counsel as evidenced by the interception of letters from appointed counsel to

defendants and the deletion therefrom of the advice of said appointed counsel."

The record shows that immediately after the defendants entered their pleas of not guilty to the indictment and the jury was sworn, the jury was excused from the courtroom and the motions referred to in this assignment were presented to the Court.

The record contains letters on the stationery of each court-appointed counsel addressed to his client at the Hamilton County Jail. The bottom part of each of these letters has been cut off. The letter from Mr. Gearinger to his client, Calvin Van Douglas, is dated July 31, 1964, and the letter from Mr. Smith to his client, Clifford Scott, is dated August 25, 1964.

The record also contains the affidavit of the defendant Douglas dated September 9, 1964, which states that when he received the letter from his court-appointed counsel it had been opened and the bottom part cut off with a sharp instrument. There is also substantially the same affidavit by the defendant Scott with reference to his letter. The envelopes addressed to the defendants, in which it is stated the letters were mailed, have typed on the front of them, in addition to name and address of the addressee, the following: Confidential Attorney-Client Relationship. Further, the affidavit of the defendant Scott dated September 11, 1964, states that at about 3:30 P.M., on September 10, 1964, a member of the staff of the Hamilton County Attorney General's office came to the jail and threatened both defendants with being put to death on the charge pending against them unless they admitted the commission of the offense. There is also in the record the affidavit of the defendant Douglas that at

the same time and place the same threat was made to him.

When the Court, at the outset of the trial, was advised of the charges made in the affidavits of the defendants, a hearing was held in the absence of the jury at which both defendants testified and both identified the same member of the Hamilton County Attorney General's office as being the person referred to in the affidavits. Bearing in mind that the first affidavit by the defendant Douglas relating to the censorship of his mail is dated September 9, 1964, and that the affidavits of the defendants relating to threats made against them by a member of the Attorney General's staff are dated September 11, 1964, there could not well be any mistake in the date of September 10, 1964, being the correct date that the defendants contend the threats were made.

The member of the Attorney General's staff identified by the defendants testified that at no time had he talked to either of these defendants in jail and that he had never talked to them anywhere. The only time he recalled seeing these two defendants before the morning of the trial was on arraignment when both were charged with another offense. The trial was held on October 1, 1964, and this witness testified he had not been in the Hamilton County Jail for any reason for over a month. Later in this hearing the Trial Judge was asked to produce his trial notes in a certain case. When produced, the Trial Judge's notes showed that on September 10, 1964, the member of the Attorney General's staff identified by the defendants as the one who threatened them in the County Jail at 3:30 that afternoon was, in fact, actively engaged in court in the trial of a case which began the morning of

September 10, 1964, and was not concluded until ten minutes after five that afternoon.

The Court's ruling on that part of the defendants' motions relating to the alleged threats by a member of the Attorney General's office is not assigned as error in this Court. The assignment relates only to the alleged denial of access to counsel by censoring and cutting off a part of the letters.

In the briefs and in the oral argument, it is contended that under the holding of the United States Supreme Court in *Escobedo v. State of Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, the Trial Judge committed error in not directing verdicts of acquittal because defendants had been denied their constitutional right to access to counsel. In overruling the defendants' motions, the Trial Judge stated, in part, the following:

"Well, gentlemen, let these motions be filed, and the Court will deny the request for, I believe, a directed verdict of acquittal therein, and it is my observation, of course, that it does not appear, whatever happened, whoever talked to these defendants, that any statement was made by the defendants against their interests, and, of course, if they were that could be excluded from the presentation of any trial where these defendants might be on trial. Now these allegations about mistreatment of the defendants because of mail being opened, I think that comes under the management of the prison or jail, and supervision of any activities of any inmates are certainly in the discretion of the Sheriff, and it doesn't appear to this Court that any abuse has been the cause of any rights of these defendants as to handling mail, even though it may have been

marked private and confidential by the attorneys writing, and the Court certainly will be alert to see that during the progress of this or any other trial that if anything else has occurred that might adversely affect the constitutional rights of these defendants that they will be protected at every point.''

At no time while confined in jail did either of the defendants make any confession or self-incriminating statement. Upon the trial of the case the State did not attempt to introduce any statement made at any time by either defendant. There is nothing in the record that in any way suggests what person might have deleted parts of the letters from the attorneys to their clients. In view of·the fact that the defendants were so obviously incorrect in their testimony relating to the alleged threats by the Assistant District Attorney General, it could be that the defendants themselves cut the bottom from the letters sent them by their lawyers. This though, we are not called upon to decide. Court-appointed counsel state that at no time when they appeared at the Hamilton County Jail to confer with their clients were they denied access to their clients or treated in any way other than with complete courtesy.

If some employee or official at the Hamilton County Jail took it upon himself to delete advice from an attorney to his client from a letter sent to the client in jail by the attorney, the courts of that county will see that such practice is not engaged in.

We find the following statement in *Green v. State of Maine,* 113 F.Supp. 253, 256, appropriate in the present situation:

"Furthermore, Green says that while he was being held in jail awaiting indictment (he did not post bail), mail to and from his attorney was opened without his authority, and when he complained he 'was locked-up and held incommunicado, in violation of his rights to counsel and due process of law.' The opening and inspection of mail passing back and forth between prisoners and those at liberty is an ordinary, usual and obviously essential incident to the safe custody of prisoners. The practice violates no constitutional right of which I am aware. The rest of the allegation, concerning holding Green 'incommunicado,' hints at a more serious matter in that it suggests that Green was denied access to his counsel. This, however, clearly was not so, for it appears that Green was represented at his trial by experienced counsel of his own choice, and it is nowhere suggested in the application for the writ that Green's counsel did not have full opportunity to prepare his defense."

In *Ortega v. Ragen,* 7 Cir., 216 F.2d 561, cert. den. 349 U.S. 940, 75 S.Ct. 786, 99 L.Ed. 1268, it was claimed that the warden's refusal to deliver a registered letter to a prisoner kept the prisoner from preparing his "defense in the Supreme Court of Illinois to seek relief from unlawful imprisonment." In discussing this contention, the Court stated:

"Certainly the control of mail going to and from inmates is an important part of administration and maintenance of discipline in a large prison. The mere withholding of a letter from a prisoner is not, of itself, violative of plaintiff's federal rights." 16 F.2d at 562.

In the recent case of *United States ex rel. Boone v. Fay,* D.C., 231 F.Supp. 387, which was decided after

*Escobedo v. State of Illinois,* supra, the petitioner contended his conviction was invalid because the committing magistrate had not advised him of his right to aid of counsel. In holding that the conviction was not invalid, the Court stated:

"* * * Whether or not such a failure violates an accused's federally protected right to due process under the Fourteenth Amendment depends in each case upon the nature of the State preliminary proceeding. *The test is whether that proceeding and what occurred thereat may adversely and prejudicially affect his defense to the charge in a subsequent trial.*" (Emphasis supplied)

The Court there cited *White v. State of Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193, *Hamilton v. State of Alabama,* 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114, and *Cooper v. Reincke,* 2 Cir., 333 F.2d 608. On March 8, 1965, the United States Supreme Court denied Boone's petition for certiorari, *Boone v. New York,* 380 U.S. 936, 85 S.Ct. 945, 13 L.Ed.2d 823. In the present case there is no suggestion that defendants were denied access to counsel at a critical stage in the criminal proceedings or that any steps were taken without the defendants having the benefit of counsel.

*Cooper v. Reincke,* supra, is cited and relied upon by the defendants in the present case. It is a *habeas corpus* case in which the writ was denied by the Federal Courts. At 613 of 333 F.2d, in Cooper, the Court held:

"The test is whether lack of counsel worked to 'infect his subsequent trial with an absence of "that fundamental fairness essential to the very concept of justice." ' "

In the opening sentence of the majority opinion in Escobedo, the United States Supreme Court stated the effect of a denial of access to counsel. There, the Court stated:

"The critical question in this case is whether, under the circumstances, the refusal by the police to honor petitioner's request to consult with his lawyer during the course of an interrogation constitutes a denial of 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution * * * *and thereby renders inadmissible in a state criminal trial any incriminating statement elicited by the police, during the interrogation.*" (Emphasis supplied)

Escobedo does not hold that the denial of access to counsel at sometime prior to the trial operates to prevent the accused from ever being tried, as the defendants in the present case seem to contend. The question is, did the trial of the accused become infected by the germ of the violation of the constitutional right of the accused to the assistance of counsel. In Escobedo, the accused was not discharged from custody of the State authorities, but the cause was remanded to the State Court for further proceedings consistent with the opinion of the United States Supreme Court.

In *Campbell v. State,* 215 Tenn. 95, 384 S.W.2d 4, the defendant made a confession to the Chief of Police after his attorney had been denied permission to see defendant. The facts in Campbell are quite similar to the facts in Escobedo. The confession was introduced in evidence on the trial. Pursuant to the holding in Escobedo, this Court reversed the conviction and remanded the cause to the Trial Court. We did not reverse and dismiss the case.

Had the defendant's trial in Campbell not been tainted by the use of the confession obtained in violation of defendant's right to counsel as held in Escobedo, that case would not have been reversed on that ground.

In the case *sub judice* the trial of the defendants was exactly the same as it would have been had nothing been deleted from the letters of counsel to the defendants. Neither defendant made any statement to the police at any time. Counsel were afforded full opportunities to confer with their clients and had full opportunity to prepare their defense. The defendants, in both the Trial Court and in this Court, are represented by able and experienced counsel appointed by the Trial Court months in advance of the trial. It cannot be said the asserted denial of access to counsel "worked to infect his subsequent trial with an absence of that fundamental fairness essential to the very concept of justice." On the contrary, the defendants had a full and fair trial. This assignment of error is overruled.

The next assignment argued in defendants' brief is assignment number eight, by which it is asserted that the Trial Court erred in denying the petition filed by court-appointed counsel for a reasonable fee for professional services rendered by appointment and command of the Trial Court in the defense of the indigent defendants. It is asserted by this assignment that requiring counsel to defend these defendants without compensation constitutes a taking of the property of counsel without just compensation.

In their brief, counsel state they are not unaware of *Wright v. State,* 50 Tenn. 256, *House v. Whitis,* 64 Tenn. 690, and *Henley v. State,* 98 Tenn. 665, 41 S.W. 352, 39 L.R.A. 126. It is argued by counsel that times and cir-

cumstances have changed since the decision of those cases and that this Court should now change the law. In Wright and in House it was held that court-appointed counsel were not entitled to be compensated for their services. In House the Court stated:

"* * * Where a lawyer takes his license he takes it burdened with these honorary obligations. He is a sworn minister of justice, and when commanded by the court can not withhold his services in cases prosecuted *in forma pauperis*."

In Drinker, Legal Ethics, 62 (1953) it is stated:

"From the earliest times it has been the practice, when persons accused of crime are indigent, for the court to appoint counsel to defend them. Lawyers have always regarded the acceptance and performance of such service as one of the obligations incident to their professional status and privileges.

"Canon 4 provides: 'A lawyer assigned as counsel for an indigent prisoner ought not to ask to be excused for any trivial reason and should always exert his best effort in his behalf.'

"In many jurisdictions a statutory fee is paid by the county to the lawyer so assigned. The Chicago Committee has held that a lawyer appointed by the court may, with the court's approval, accept a fee (not suggested by him) from the relatives of his client; or a voluntary gift; but he may not demand a fee, directly or indirectly."

In Cheatham, The Legal Profession, 513 (2d Ed.1955), it is stated:

"* * * It is the general rule that each attorney, on his admission as a minister of justice and agent of the court, becomes subject to assignments from the court to represent needy persons without charge or for any fee they may be able to pay. The theory of this obligation is not peculiar to our law; it is a characteristic of the lawyer's position in all civilized communities, and there is evidence that it has been recognized from the earliest times. In criminal cases the legal nature of the obligation is clear because it is enforced. No statute is necessary to give the court this right to call upon the bar, its power is inherent, and statutes only declare it. In civil cases, as we have already seen, the power has fallen into such disuse that its existence is forgotten or denied. * * *

"This obligation owed by every lawyer to the poor, which is stated with reasonable clearness in the American cases, and which is undisputed in other systems of law, finds unmistakable support in the accepted standards of ethics. * * *

"The Hon. Charles E. Hughes, formerly a justice of the Supreme Court of the United States, has said: 'To take from the poor man a part of the burden which necessarily falls on him because of his poverty and see to it that he obtains in every proper case his legal rights has always seemed to me to be a part of the duty of the lawyer.' "

The statements contained in the foregoing texts find support in the reported opinions in most jurisdictions. See Annotation 130 A.L.R. 1439, in which at 1444, cases from a number of jurisdictions are cited and the following statement is made:

"It has been held in a number of cases that the services required of attorneys who have been appointed to defend pauper defendants charged with crime are such as charity and humanity in behalf of the destitute demand; and that they cannot be deemed to serve in expectation of a reward, but that rather the duty of gratuitous service is correlative to the rights and privileges which have been conferred upon them."

In this same annotation, at 1445, it is stated:

"The courts of Indiana, Iowa, and Wisconsin are not in accord with the general rule hereinbefore discussed, but they hold instead, that attorneys appointed to defend indigent defendants are, even in the absence of statute, entitled to compensation from the public."

While the Tennessee cases referred to above are not cited in the part of the above annotation from which we have quoted, it appears that our cases are in accord with the great majority of jurisdictions. If the law of these cases is to be changed, it would be a legislative function to do so and not a judicial function. The Tennessee Legislature has not been unmindful of the changed conditions discussed in the brief of court-appointed counsel for, by Section 10 of Chapter 217, Public Acts 1965, which becomes effective in the near future, provision is made for reasonable compensation to attorneys appointed to defend indigent persons accused of crimes.

We are not unmindful of the valuable services rendered to the defendants in this case by court-appointed counsel, nor do we minimize the burden placed upon the bar in rendering such service; however, membership in the profession carries with it certain burdens as well as great benefits. We find ourselves in the position of the Court

in *Patton v. Dixon*, 105 Tenn. 97, 58 S.W.299, in which the Court found itself unable to award compensation to a faithful guardian *ad litem*. There the Court stated:

"* * * we see no ground upon which we can tax a fee for him against the complainant, and he can only rely upon the approval of his conscience here, and his reward hereafter when the final judgment is passed, for his compensation." 105 Tenn. at 106, 58 S.W. at 301,

Assignment number eight is overruled.

By assignments of error one and two the sufficiency of the evidence to support the conviction is questioned. These assignments are not argued in defendants' brief, nor could they be, for the record shows that in the early morning hours of June 6, 1964, two passengers in a taxicab in Chattanooga robbed the cab driver and took the taxicab. One of the passengers held a knife at the cab driver's back while the other passenger got out of the cab, opened the door on the driver's side, and held a sawed-off shotgun on the driver. The cab driver positively identified the defendants and the part played by each in this armed robbery. Furthermore, the defendant Scott was arrested while asleep in a room rented to the defendant Douglas. The cab driver's wallet was on an ironing board by the bed in which Scott was sleeping. Later the sawed-off shotgun was found. No proof was introduced on behalf of the defendants on the trial.

By assignment of error number three it is contended the Trial Court erred in refusing to grant a severance and afford each defendant a separate trial. No authorities are cited in support of this assignment. The action of the Trial Judge in refusing to grant severance is fully supported by the opinion of this Court in *Essary v. State*, 210 Tenn. 220, 230, 357 S.W.2d 342.

■ It is next assigned as error that the Trial Court erred in denying motions for a change of venue. The record does not show any evidence was introduced in support of the motions for change of venue. This record does not disclose what, if any, publicity had been given the crime involved, nor is there anything to indicate that the defendants were not tried by a fair and impartial jury. This assignment is overruled. See *Hughes v. State,* 126 Tenn. 40, 84-86, 148 S.W. 543.

■ It is next assigned as error that the Trial Court erred in overruling defendants' motions to quash the indictment upon the ground the Grand Jury was not properly constituted. There is nothing in the record to support the motions to quash the indictment. This assignment of error is overruled.

■ By the remaining assignment, it is urged that the imposition of sentences of 50 years evidences passion and prejudice on the part of the jury. The offense for which the defendants were tried and convicted provides that the punishment for same "shall be death by electrocution, or the jury may commute the punishment to imprisonment for life or for any period of time not less than ten (10) years." T.C.A. sec. 39-3901, as amended. This assignment is without merit. The jury exercised the clemency authorized by the statute.

All of the assignments of error are overruled and the judgment of the Trial Court is affirmed.