## GERNT v. CUSACK.

*(Knoxville.* November 24, 1900.)

1. CHANCERY PLEADING AND PRACTICE. *Averment of fraud, how made.*

It is not sufficient, in a bill to set aside a contract, to aver fraud in general terms, and *a fortiori*, to omit the averment altogether, but the particular facts constituting the fraud must be set out. (*Post, pp. 149, 150.*)

Cases cited: Raht *v.* Mining Co., 5 Lea, 1; Neal *v.* Smith, 1 Lea, 371; Shepherd *v.* Shepherd, 12 Heis., 276.

2. SAME. *Both allegations and proof are essential.*

Allegations without proof, or proof without allegations, can never be the foundation of a decree. (*Post, p. 150.*)

Cases cited: King *v.* Rowan, 10 Heis., 675; Furman *v.* North, 4 Bax., 296; Robertson *v.* Wilburn, 1 Lea, 633; Randolph *v.* Bank, 9 Lea, 63; McKelden *v.* Gouldy, 91 Tenn., 677; Bradshaw *v.* VanValkenberg, 97 Tenn., 316; Bank *v.* Carpenter, 97 Tenn., 437.

3. SAME. *Case in judgment.*

The complainants seek to recover of C. the proceeds of certain oil leases, which they aver were received by C. as partner of complainants upon a sale (made under an option secured by one of complainants), and fraudulently transferred by C. to his wife. The answer denied the entire case made by the bill, and C.'s wife set up title in herself, averring that the sale of the oil leases was made, and the proceeds received by her, under an option secured by herself after the expiration of complainants' option. The proof sustained the answer.

*Held:* Complainants are not entitled to any relief, regardless of

the good or bad faith of the transaction. The pleadings make no attack upon or claim under the wife's option. (*Post. pp. 150, 151*).

---

## FROM FENTRESS.

---

Appeal from Chancery Court of Fentress County. T. J. FISHER, Ch.

O. C. CONATSER, JOHN H. McMILLAN, JOUROLMON, WELCKER & HUDSON for Gernt.

SMITH & SMITH, J. A. ALLARD, C. E. SNODGRASS, ROBINSON, SMITH & LANSDEN, YOUNG BROS., W. T. MURRAY and WASHBURN, PICKLE & TURNER for Cusack.

BEARD, J. The original bill in this cause avers that, on February 11, 1896, complainant, Bruno Gernt, secured from Hanckey & Cole an option on their interests in certain oil leases in lands in Overton, Pickett and Fentress Counties, at the price of $10,000, and that, relying upon the ability of his co-complainant, Fry, and of the defendant, James Cusack, to aid him materially in disposing of this option at a profit, on that day he entered into a written contract with them, in which, after reciting this option, and that it terminated "February last, 1896," it was stipulated that, in consideration of each of the contracting

parties devoting his efforts to a sale of this property, that the profits arising therefrom should be divided between them as follows: One-half to Gernt, and one-fourth each to Cusack and Fry. It is further averred that, as the result of their joint efforts, a sale of this interest to Percy and Filer, for the consideration of $30,000, was effected on the 15th of April, 1896, and that the whole of the purchase money had been paid; that one Collins assisted in making the sale, and of the profits derived therefrom Gernt had received only the sum of $1,000, and Fry nothing, while Cusack had received $8,500, which he had fraudulently delivered to his wife, with a view to defeat the respective claims of the complainants, and this money was then on deposit in the Bank of Livingston. The bill then charged that "the said James Cusack is indebted to complainant, Bruno Gernt, in the sum of $3,750, and to complainant, A. J. Fry, in the sum of $2,375 on account of the profits and commissions received from the sale of the oil lands and leases" described, and complainants prayed a decree against him for these sums and in the meantime for an attachment to be levied on all the funds in the hands of the Bank of Livingston standing to the credit of either James Cusack or his wife, M. G. Cusack, to be held for the satisfaction in whole or in part, as might be, of the decree thus sought. The Bank of Livingston was called on to

answer , as garnishee as to the amount of funds so held. Thereafter an amended bill was filed, in which, after repeating the averments of the original bill, it is alleged that the option of Gernt from Hanckey and Cole was obtained on January 1, 1896, and ran for thirty days, and that it had been extended and was in full force and effect when "complainants and defendant, James Cusack, sold the leases to Percy and Filer; that the contract between the complainants and said Cusack, of February 11, 1896, was also in full operation at the time of said sale," and that, having received $8,500 of the compensation for making the sale, Cusack and wife had entered into a conspiracy to defraud complainants of their shares in said sum of money, and, in furtherance thereof, had deposited it to the credit of Mrs. Cusack. Other averments are made in this amended bill, but it is unecessary to set them out. As in the original bill, so in the amended bill it is prayed that the transfer of the $8,500 by her husband to Mrs. Cusack be set aside for fraud, and that complainants be given a decree for the sums respectively due them, and that the same be paid out of the fund attached. There is also a prayer for general relief.

Cusack and wife answered the original and amended bills, and Mrs. Cusack filed her answer as a cross bill. In their answer they admit that Hanckey and Cole owned the oil leases and in-

terest mentioned in the bill; that Gernt, prior to February 11, 1896, obtained an option to sell the same, and that complainants and James Cusack entered into the agreement or contract set out in the original bill, but they deny that this agreement existed longer than the power to sell which occasioned it. In other words, they insist that it terminated with the option, and that this latter expired the last of February, 1896, and thereafter it was not effective and operative between the parties, and James Cusack avers that, if the option was renewed, he was no party to the renewal. Mrs. Cusack also denies that the option to Gernt was renewed, or, if it was, that she had any knowledge of it, and she avers that, through her agent, Collins, she obtained an option from Hanckey and Cole, and that, under her option, she, through her agent, sold the interest of said Hanckey and Cole to Percy and Filer for $30,000. Mrs. Cusack and her husband, in short, deny the whole predicate of the bill and amended bill upon which relief is sought. Her contention, and that of her husband, as stated in the answer and cross bill, is that, April 2, 1896, after the option to Gernt had expired, dealing for herself and independently of her husband and with her own means, as she had been doing for years, and as she had the right to do, she obtained, through her agent, Collins, an option on these oil properties from Hanckey and Cole, to

22 P—10

run for thirty days, with a privilege of extension for fifteen days, upon certain conditions, for $12,000, and that within the time of her option she sold the properties to Percy and Filer for $30,000. It also averred that the $1,000 received by Gernt was wrongfully received by him from her agent, Collins, and that this $1,000 was paid to him to prevent him from intermeddling with her business and defeating the trade she, through her agent, Collins, was negotiating with Percy and Filer. In her cross bill, Mrs. Cusack seeks for a decree against Gernt for this sum thus, as is alleged, wrongfully obtained by him from her agent.

Gernt answered this cross bill, and denied that Mrs. Cusack made the sale to Percy and Filer, or that he injected himself into her business transaction or that he made any false statements to her or her agent, and again avers that the sale was made under his option and by virtue of the contract between himself, Fry, and James Cusack. He admits the receipt of $1,000, but alleges that this was only a part of his share of the profit upon his option.

Thus it will be seen the issue made upon these pleadings was, Was the sale to Percy and Filer, made under the Bruno Gernt option, in which Gernt, Fry, and James Cusack were interested, or under the Collins option, of which Mrs. Cusack was owner? On this issue the Court of Chancery

Appeals reports as follows: "It will not be seriously contended that these properties were in fact sold under the Gernt option, for Gernt himself recognized the option sold by Hanckey and Cole to Collins, and went to Bowling Green, O., with Percy and Filer, to aid them in effecting a purchase from Collins under the option of the latter." Again, in a supplemental opinion, it is stated that "the sale to Percy and Filer was not, as a matter of fact, made under the option . . . to Gernt, but was in fact made under the option . . . . to Collins for the benefit of Mrs. Cusack."

Thus it will be seen the theory presented by the complainants in their pleadings as that upon which they were entitled to recover was distinctly found against them, and the contention of Mrs. Cusack, as presented in her answer and cross bill, as distinctly found in her favor. The issue being one purely of fact, it would seem to follow that the suit of complainants would be dismissed. To prevent this result, the complainants invoked certain equitable privileges, the statement of which we take from the opinion of the Court of Chancery Appeals, as follows:

"The mode of avoiding this result on the part of the complainants is by an array of evidence, direct and inferential, which, it is insisted, shows that James Cusack and wife, by fraud and collusion, secured the Collins option to defeat the rights of complainants under the Gernt option, and

that James Cusack, being a partner under the Gernt option, his fraud, connived at and participated in by the wife, nullified the Collins option, and operated, by virtue of equitable principles, to bring the profits of the sale that was made under the provision of the Gernt option.

"Tersely stated," continues that Court, "the proposition in this connection is that Gernt, although he thought that his option was gone, and he assented to the Collins option, and, so thinking, aided in effecting the sale under the Collins option, nevertheless, in the view of a Court of Equity, he effected the sale under his own option, because of the fraudulent procurement of the Collins option by Cusack and wife for their own benefit."

This view was adopted by that Court, and hence a decree against the Cusacks in favor of the complainants for their respective shares in the sum of $8,500 received by Mrs. Cusack from the proceeds of the sale.

Thus it will be seen the effect of this holding is to set aside and annul the Collins option as a fraud on the rights of the complainants, while neither the original nor amended bill makes any reference to this option, and both fail to charge fraud in obtaining it or in making sale under it, the only charge of fraud being as to the disposition of the proceeds of sale under the Gernt option when received by James Cusack. On the

other hand, the answer of the Cusacks sets up the Collins option, claims the sale was made thereunder, and avers the *bona fides* of the transaction throughout.

We think there are two rules of equity practice which were overlooked in this decree, either of which requires its reversal:

1. It is well settled that when a bill seeks to set aside a contract upon a charge of fraud, it is not sufficient to make such charge in general terms, but it should point out and state the particular acts of fraud. *Raht* v. *Mining Co.,* 5 Lea, 1; *Neal* v. *Smith,* 1 Lea, 371: *Shepherd* v. *Shepherd,* 12 Heis., 276.

In *Raht* v. *Mining Co., supra,* the Court says: "It is certainly true the answer abounds in allegations of fraud and overreaching on the part of Raht, and makes a positive statement to the effect that the resolutions of the board, admitting the indebtedness of $84,711.71 and creating the lien relied on in the original bill, was obtained by the fraudulent suppression and misrepresentation of important facts; but these allegations are too general and indefinite to allow proof to be introduced to sustain them or otherwise to command the attention and interposition of a Court of Equity." Then, *a fortiori,* such a Court should refuse its interference when complainants rest their right to recovery upon fraud, failing, however, to allege it even in general terms.

But it is said by counsel of the complainants that, without regard to pleading, the whole case was opened up in the evidence, and the Court of Chancery Appeals, yielding to this insistence, adopted the · theory that Mrs. Cusack had colluded with her husband to obtain the fruit of the Gernt option, and was, therefore, bound in equity to account to complainants. This leads us to the other of the ·rules referred to, to wit:

2. "Allegations without proof, or proof without allegations, can never be the foundation of a decree." *King* v. *Rowan,* 10 Heis., 675; *Furman* v. *North,* 4 Bax., 296; *Robertson* v. *Wilburn,* 1 Lea, 633; *Randolph* v. *Bank,* 9 Lea, 63; *McKelden* v. *Gouldy,* 91 Tenn., 677; *Bradshaw* v. *Van Valkenberg,* 97 Tenn., 316; *Bank* v. *Carpenter,* 97 Tenn., 437.

But it is sought to avoid these two rules of equity practice by treating the bill as a bill to wind up a partnership and have an accounting between the partners. The difficulty, however, in the way of complainants in this respect is that Mrs. Cusack was not a member of this partnership. Her claims rest on an independent contract, which she alleges was made on her own credit and effected through her personal agent. This being so, upon what authority can it be maintained, giving the bill the interpretation now insisted on, that a Court of Equity can nullify Mrs. Cusack's purchase under the Collins option

and treat it as being made under the Gernt option? This can only be done by first finding that she was guilty of a fraudulent combination with her husband to defeat his partners, and then by converting her into a constructive trustee for them. Such a remarkable result cannot be reached without proper pleadings.

The principle insisted upon by counsel of complainants that "if a stranger collusively join with a partner in a rival undertaking, the profits of the collusive or rival undertaking become partnership assets" is sound and well supported by authority. 1 White & Tudor's Leading Cases in Equity, 62; 2 Lindley on Part., 495; Story on Partnership, Secs. 174-5. But this principle cannot be successfully invoked here, because there is no averment in the original or amended bill, nor admission in the answer of the Cusacks, to warrant its application.

These considerations, without more, are sufficient to dispose of this case. It is, however, not improper to say that it is by no means certain from the finding of facts by the Court of Chancery Appeals that the merits of this controversy, even could they be reached by us, would be found to afford sufficient basis for a decree in favor of the complainants.

However this may be, at least upon the points of pleading already considered, we are satisfied that complainants' bill must be dismissed, and it

is so ordered. The cross bill of Mrs. Cusack is also dismissed. All the costs of the cause, save such as pertain to the cross bill, will be paid by complainants and their sureties. A decree will go against Mrs. Cusack and her sureties for the costs of the cross bill.