MRS. ISABELL V. ELLIS et al. v. J. P. J. BRUCE et al.

Western Section.    August 5, 1927.

No petition for Certiorari was filed.

1. **Principal and agent. Fraud. Principal is liable for fraud of his agent within the scope of the employment.**

For frauds and misrepresentations of his agent within the scope of the employment, the principal is liable no less than in other cases, and this, although he had no knowledge thereof, and has received no benefit therefrom.

2. **Evidence. Parol evidence is always admissible to show that an instrument was obtained by fraud.**

Parol evidence is admissible to contradict a written contract when it is alleged that the contract was executed through or by fraud, accident or mistake.

3. **Fraud. Evidence. Evidence held to show defendant guilty of fraud, although representations were actually made by his agent.**

In an action to recover damages caused by misrepresentation and fraud where the plaintiff purchased of the defendant certain notes which the agent of the defendant represented were secured by a second deed of trust where in fact they were secured by a third deed of trust, held that the evidence showed the defendant guilty of fraud, even though the fraudulent representations were actually made to plaintiff by defendant's agent.

Appeal from Chancery Court, Shelby County; Hon. D. W. De-Haven, Chancellor.

Affirmed.

Davis & Costen, of Memphis, for appellee.

A. H. Murray, of Memphis, for appellant.

OWEN, J. The defendants have appealed from a decree rendered against them in the chancery court of Shelby county for $1,000. The complainants averred that on the 4th day of September, 1925, they entered into a contract with J. P. J. Bruce, under the terms of which they agreed to sell to Bruce certain real estate situated in Shelby county, Tennessee. The bill further avers that said contract was signed by L. B. Ellis and J. P. J. Bruce who were acting for themselves and also their wives; that the consideration agreed to be paid for said property was $16,630, and that as a part of the purchase price the said J. P. J. Bruce delivered to complainants seven series of notes of $1090 each, or a total of $7,630, which said notes were secured by deeds of trust on certain houses and lots in Douglas Park Subdivision, Memphis, Tennessee. The bill further avers that said deeds of trust and notes were shown to complainants by C. R. Arnoult, agent of the defendants in transferring said notes and negotiating the deal; that the said C. R. Arnoult, as agent of said defendants, represented to them that said series of notes were secured by deeds of trust and that they were second mortgage notes, and that relying upon these representations, they executed said contract and conveyed said property by warranty deed. The bill further avers that since the execution of said warranty deed and the acceptance by complainants of said series of notes, they sold said notes to one Mrs. Etta McDaniel, and that soon thereafter they learned that the said series of notes were in fact third mortgages instead of being secured by second mortgages. The bill further avers that defendants perpetrated a fraud upon complainants in transferring said series of notes to them with the representation that they were secured by second liens and avers that defendants knowingly concealed from complainants the fact that said notes were secured by third mortgages. The bill further avers that after said notes had been transferred by complainants to said Mrs. Etta McDaniel, they were compelled to buy in the second mortgage which was in existence on said property and waive same in favor of the third mortgages held by said Mrs. McDaniel in order to comply with the terms of their contract with Mrs. McDaniel because complainants had sold said notes to Mrs. McDaniel as secured by a second lien and had so contracted with her. The bill avers damages to the amount they were compelled to pay for the second mortgages. The bill prayed for an injunction to restrain defendants from conveying or encumbering the property which complainants deeded them in said trade.

Defendants in their answer admitted the execution of contract dated September 4, 1926, between complainants and J. P. J. Bruce and averred that this written contract contains all of the agreements and representations made between the parties prior to and

at the time the said sale took place. Their answer denies that defendants ever stated to said real estate agent, C R. Arnoult that the said seven series of notes were secured by second mortgages nor was said agent ever authorized to offer them as such; that in fact the defendants traded the said seven series of notes "as is" and no representations whatever were made to complainants or to their agent or to the effect that said series of notes were secured by trust deeds which were second liens on the property. Their answer avers that the written contract of September 4, 1925, contained all of the representations and the said contract does not provide that said seven series of notes were secured by second liens. The answer further avers that complainants or their agent had ample opportunity to investigate the said seven series of notes, and denies that defendants ever concealed or attempted to conceal any fact in connection with said notes from complainants.

The Chancellor sustained complainants' contention and rendered a personal decree against the defendants for $1,000, which was the amount complainants had paid to protect the property, or protect the notes that they had received from the defendants. The defendants excepted to the decree, prayed and were granted an appeal to this court and have assigned seven errors.

The first error is that the court erred in failing to dismiss complainants' bill and in rendering a judgment against the defendants.

The second, third and fourth assignments complain of the action of the court in holding that the defendant J. P. J. Bruce represented to complainants that said series of notes were secured by a second mortgage, and as the contract executed by the parties was a written instrument, parol evidence was inadmissible to vary the terms of same.

The fifth and sixth assignments of error complain of the court not excluding certain testimony of A. C. McKinney and Augustus B. Herbers, two real estate dealers, both of whom testified that shortly before the defendant Bruce traded the notes in controversy to the complainants he undertook to trade these notes to these parties, and represented them to be secured by second mortgage.

The seventh assignment of error can be considered with the first assignment.

As to the fifth and sixth assignments of error in regard to the court's failure to exclude the testimony of McKinney and Herbers, there is no bill of exceptions in the record, and it appears that some six days prior to the hearing of this cause the defendant filed exceptions to the testimony of Herbers and McKinney, but the trial court did not pass upon these exceptions. Not having any ruling from the lower court upon exceptions made to testimony, it is presumed that the defendants waived their exceptions at the hear-

ing. The decree does not recite anything in regard to this evidence complained of.

We quote from the decree, as follows:

"And it appearing to the court that the complainants on the 4th day of September, 1925, entered into a written contract with the defendant, J. P. J. Bruce, whereby the complainants conveyed to the defendant, Bertha Jane Bruce, the following described property, to-wit:" (then follows a description of property).

"That in payment of the said land the defendant, J. P. J. Bruce, transferred and assigned to the complainants as part of the purchase price seven series of notes aggregating $1090 each, which said seven series of notes were secured by seven deeds of trust on certain houses and lots in Douglass Park Subdivision, Memphis, Shelby county, Tennessee, that each of said trust deeds securing said seven series of notes were recorded in the Register's office of Shelby county, Tennessee, prior to the date of the written contract between the complainants and the defendant J. P. J. Bruce, dated September 4, 1925, and represented to the complainants that said seven series of notes were second mortgage notes; that in truth and in fact there was at that time a valid and subsisting second mortgage lien on six of said houses and lots in the sum of $150 each, and one of said lots for the sum of $200, making a total of $1100 due to the Villa Land Company.

"The court further finds that the complainants relying upon said representation, sold and transferred said seven series of notes represented to one Mrs. McDaniel, after having discovered that there were second mortgage liens upon said property as above set out, the complainants were on the 8th day of December, 1925, forced to purchase all of said second mortgage notes from the Villa Land Company for the sum of $1,000, and release or waive same so as to permit said seven series of notes to become the second mortgage on said property.

"The court further finds that the complainants have tendered to the defendants, and do in their pleadings tender to the defendants all of said notes and mortgages last above described.

"The court further finds that the representation made by the defendants to the complainants was false and fraudulent; that the complainants relied upon said representation; that the insolvency of the defendants was not shown and the complainants are not entitled to any lien upon the property conveyed by the complainants to the defendant, Bertha Jane Bruce."

The proof shows that the only encumbrance mentioned by Mr. Bruce, upon the property for which he held the notes, was to a building and loan company and amounted to about $800.

Mr. Bruce contends that he told Arnoult, the real estate broker, that he didn't guarantee the notes to be even third mortgage notes; that he must trade the notes "as is." Mr. Arnoult appears to be an experienced real estate broker, and he testifies that a "man would be a fool" to undertake to trade real estate notes "as is." Arnoult was Bruce's agent in the transfer of the notes. Mrs. Ellis asked Bruce when the contract was being closed up if these notes were second mortgage notes and she testifies that he assured her that they were. It appears that there was a second mortgage on each of the seven pieces of property on which Bruce held mortgage notes, which were traded to the complainants. These seven notes of $150 each, were owned by the Villa Land Company, and were the ones that the complainants had to pay to protect their holdings or security which they had received from the defendant Bruce. They purchased $1050, and accrued interest, for $1,000. They asked Bruce to protect them, and after purchasing the notes they offered them to Bruce for $1,000, the amount that they had paid.

We are of opinion that the decree of the Chancellor is sustained by the facts as found in the record, and by a preponderance of the evidence, and that the complainants were misled by Arnoult, the agent of Bruce, and Arnoult was misled by Bruce; and Bruce's statements and conduct was a fraud upon complainants' rights.

"For frauds and misrepresentations of his agent within the scope of the employment, the principal is liable no less than in other cases, and this, although he had no knowledge thereof, and has received no benefit therefrom, accordingly it has been held that a manufacturer of a beverage is responsible for the fraudulent representations of his agent to secure a merchant to handle it, that it is not alcoholic. Again, an agent in charge of a branch office of a lottery company, who induces another who is ignorant of the fact that the business of the company is that of a lottery, to purchase certificates containing a contract fraudulent upon its face, by false representations that the business conducted by the company is legitimate and profitable, is held liable equally with the principal in an action brought by the party making the investment to recover the money paid by him for these certificates." 21 R. C. L., p. 851.

In the case of Pearcy v. Huddleston, 3 Yerg., 36, which was a suit for the rescission of a sale of a judgment on persons known to be insolvent, both by the vendor and purchaser, where the purchaser was induced to buy by the false and fraudulent representations of the vendor that one of the judgment debtors had at his sawmill plank ready to pay the debt, which the purchaser could get upon application. The court said:

"At the time the complainant purchased the judgment on Trott and McBroom, the defendant told him that there was walnut and cherry plank at Trott's mill, and that he could get out of the plank to the amount of the execution at any time he might apply for it. It is true that Trott and McBroom were insolvent; but as Trott had a sawmill it was quite likely that he might be able to pay a debt in plank, and the statement of the defendant that he has the plank ready for the purpose of making that payment was most likely to take the confidence of the complainant. This representation surely had the effect of inducing the complainant to act when otherwise he would not. And, being false is, therefore, a fraud, which will affect the sale. It is not one of those nude assertions which it is a purchaser's folly to trust, but it is the affirmation of a fact, which, if true, would have given real value to the judgment, which otherwise was worth nothing."

Parol evidence is admissible to contradict a written contract when it is alleged that the contract was executed through or by fraud, accident or mistake.

"Parol evidence is always admissible to show that an instrument was obtained by fraud or duress, and so to avoid it." 10 R. C. L., p. 1058; Littlejohn v. Fowler, 5 Cald., 284; Richardson v. Thompson, 1 Hump., 151; Wood v. Goodrich, 9 Yerg., 266.

It results that we find no error in the decree of the Chancellor. All of the assignments of error are overruled and disallowed and the judgment of the lower court is affirmed.

The complainants will recover of the defendants and their surety on appeal bond the amount of the judgment rendered in the lower court with interest thereon from the date of its rendition with all of the costs of the cause, together with costs of appeal, for which execution will issue.

Heiskell and Senter, JJ., concur.