## MRS. MARY S. ARNOLD v. POPLAR TERRACE REALTY COMPANY.

Western Section.   December 17, 1930.

Petition for Certiorari denied by Supreme Court, May 2, 1931.

Wilson, Gates & Armstrong, and G. J. Leftwich, all of Memphis, for appellant.

Crabtree & Crabtree, of Memphis, for appellee.

WARDLAW STEELE, Sp. J.  The bill in this cause was filed by the complainant, Mrs. Mary S. Arnold, against the defendant, Poplar Terrace Realty Company, to recover from the defendant the sum of $550 alleged to have been paid by her to the agents of the defendant, Martin-Craig and Company, as the purchase price for a certain lot, being lot No. 127 of the Poplar Terrace subdivision in the city of Memphis, Tennessee.

The complainant alleges in her bill that on October 10, 1929, that the said agents of the defendant contracted with her to sell her

said lot at and for the price of $550, which she paid to the said agents by check, at the time said contract was entered into. That the said agents represented to her at the time she made the payment of $550 to them that the total price for said lot was $550 and that acting upon the representation of said agents she signed a written contract for the purchase of said lot. That said contract signed by her was a printed form with blanks left in it in which was to be inserted the amount of the purchase price and that the said agents filled in the said blanks and that the contract was presented to her for her signature and that she saw the figures $550 inserted in one of the blanks in said printed contract and signed the same and handed it back to the said agents and that it was then folded and given to her so that she could not read the same; that immediately upon the contract being delivered to her she opened it up and read it and found that there had also been inserted in said contract that the total price that she was to pay for said lot was $1450 and that deferred payments of $20 per month were to be made by her with interest until the full amount of $1450 was paid. That when she discovered that the contract stipulated that the price to be paid for said lot was $1450, instead of $550 as she understood, that she immediately told the said agents that she understood the purchase price was $550 and demanded that they return to her the check for $550, which she had given in payment of said lot and also demanded that the papers which she had signed be returned to her; that said agents refused to return to her the check or the said papers signed by her, but stated to her that they would handle the matter to her satisfaction and that if she would come to their office in a few days that they would make everything satisfactory with her. That the check delivered by her to the defendant's agents was immediately cashed before she could stop payment on the same.

She also avers in her bill that the defendant's agents represented to her that said lot was clear of all encumbrances and that upon investigation she found that the same was encumbered by a trust deed to secure the payment of $1120 and that it was also encumbered by certain restrictions and limitations contained in the deed under which the defendant held title to said property.

She also charged in her bill that the defendant's agents agreed and promised that they would resell said lot within a week at a profit to her of approximately $300. She further charges that the defendant has failed and refused to refund the $550 paid by her to its agents and to resell the said lot or to furnish her an abstract of title or a warranty deed to said property and had taken no steps to relieve said property of the encumbrances and restrictions.

The defendant in its answer to the bill admits the ownership of said subdivision and that it employed Martin-Craig and Company to sell said real estate and that said employment was evidenced by a written contract and an amended contract bearing date, August 1, 1929. And avers that it knew nothing of the alleged agreement made by its agents with the complainant or of the check given to them for $550 and that it did not receive any part of said money and that the said agents were not authorized to enter into an agreement to sell said lot upon the terms and conditions alleged in the bill and that said agents were only authorized by it to sell said lot for the price stipulated in the amended contract entered into by it with said agents and only to represent said property in all respects as the facts warranted. That the true facts as to said encumbrances and building restrictions upon said lot were fully disclosed by it to said agents. It also avers that said check was cashed by said agents for their own benefit and denies any authority of said agents to enter into the alleged agreement with the complainant. It also denies that it participated in any fraud or misrepresentations to the complainant to induce her to purchase said lot or to pay said sum of $550 to said agents. And that said agents were only authorized to sell said lot upon the terms and conditions contained in its written contract with them and were not authorized to execute any other form of contract except the form furnished by it to its said agents and that the form of contract alleged to have been made by said agents with the complainant was unauthorized and not in conformity with its contract, and was without the knowledge, consent, or approval of defendant. The defendant denies all of the material allegations of the bill with reference to fraud and misrepresentation and denies that it is indebted to the complainant in the sum of $550 alleged to have been paid by her to its said agents, as the purchase price for said lot.

Defendant admits in its answer that said lot was encumbered by a trust deed and also by said building restrictions and limitations, but avers that under its contract with said agents, that the purchaser of said lot was not to receive a warranty deed from it until all of the purchase money had been paid and at which time it stood ready to relieve said lot of said trust deed and encumbrances. It also avers that said agents were only authorized to sell said lot subject to said building restrictions and limitations.

The case was heard in the lower court by the Chancellor and a jury, upon oral testimony.

The following issues were submitted to the jury and answered under direction of the court:

No. 1. Did Martin-Craig Co., represent to complainant, Mrs. Mary S. Arnold, that the total price for lot 127 of Poplar Terrace Subdivision was $550, and obtain her signature to the memorandum upon that representation? Answer: Yes.

(a) If "Yes" did complainant rely on said representation? Answer: Yes.

(b) Did defendant authorize said representation? Answer: No.

No. 2. Did Martin-Craig & Company agree and obligate themselves, as a part of the consideration for the purchase of lot 127 that they would resell same for complainant at a profit of $275 or any other amount? Answer: Yes.

(a) If "Yes," did complainant rely on such representation? Answer: Yes.

(b) Did defendant authorize said representation? Answer: No.

No. 3. Did Martin-Craig & Company, through the representation set forth in issues 1 and 2, obtain from complainant the sum of $550? Answer: Yes.

No. 4. Did defendant conspire with Martin-Craig & Company to sell said lot through false representations with reference thereto? Answer: No.

No. 5. If "Yes," to either issue 1 or 2, did defendant have knowledge of such character of representation before the sale to complainant was made? Answer: No.

No. 6. What was the reasonably, fair, market price of said lot in October, 1929? Answer: ————.

At the conclusion of the proof, the Chancellor directed the jury to answer said issues as above set forth and issue No. 6 was withdrawn from the jury by the court as being immaterial.

Both complainant and defendant moved the court for a decree in their favor on the verdict of the jury. Complainant's motion for a decree was sustained. And a decree was entered by the Chancellor in favor of the complainant and against the defendant for the sum of $550 and interest.

Defendant filed a motion for a new trial which was by the court overruled and to which action of the court defendant excepted and prayed an appeal to this court which was granted and perfected.

The defendant has assigned five errors to the action of the lower court.

Said assignments are (1) that there is no evidence to support the decree of the Chancellor, and (2) that the court erred in holding that the alleged misrepresentation of defendant's agents were within the apparent scope of said agents' authority, and (3) the the court erred in sustaining complainant's motion for a decree, and (4) that the court erred in overruling defendant's motion for a decree in its favor on the verdict of the jury, and (5) that the

court erred in rendering a decree in favor of the complainant in the sum of $568.37 together with costs.

We shall consider and dispose of all of the assignments together.

The Chancellor decreed as follows:

"The court is of the opinion and doth adjudge and decree that the representations made by Martin-Craig & Company, as sales agents for the defendant, Poplar Terrace Realty Company, were within the apparent scope of said agents' authority."

As stated above, the Chancellor was of the opinion that there was no controverted questions of fact under the proof, as to the issues submitted and directed the jury to answer said issues as heretofore set out.

The material facts proven on the trial are as follows:

The complainant is an elderly lady, 74 years of age; a widow with no immediate relatives and without business knowledge or experience. The only property which she owned was a home which she rented, reserving one room for herself and renting the balance of the home in exchange for her board. She also had the sum of $800 in cash, on deposit in the first National Bank of Memphis.

On the day that she entered into the contract to purchase said lot from the defendant's agents, she was invited to go out to the subdivision with a group of ladies, by a friend of hers, whom she knew through her Church associations.

It appears that the defendant's agents had made a proposition to the Ladies Aid Society of her church to pay the society the sum of twenty-five cents for the name of any prospect whom they brought to the subdivision and that a free lunch would be furnished them on the grounds. And on the day that the contract was entered into, when she arrived at the subdivision with a group of other ladies, she found that the lunch was being served in a large pavilion at the entrance of the subdivision. After the lunch had been served a lecture was given in the pavilion under the auspices of the real estate agents and the subject of this lecture being the growth of Memphis, with special reference to the values of real estate and of the lots of this subdivision.

After the lecture had been given, one of the defendant's agents, who was employed to sell said lots, called upon the complainant to ride with him through the subdivision and insisted that she go alone. She was carried over the subdivision and lot No. 127 was picked out for her by the agent and she was induced and persuaded to buy this particular lot, as she understood for the total consideration of $550 in cash and also upon the representation that said lot would be resold for her at a profit of approximately $300. She was invited into a private booth or room adjoining the pavilion where she was induced to sign the contract. She did not read the

contract and her eyesight appears to have been very poor. After she signed the contract, a copy of it was folded up and delivered to her and after she left the private booth, she unfolded the paper and looked at it and discovered that it was stipulated in this paper, which she had signed that she was to pay $1450 for the lot and that the deferred payments were $20 a month. As soon as she discovered that the price inserted in the contract was $1450, she immediately went back into the room and told defendant's agents that she never agreed to pay $1450 for the lot and that she could not pay it and asked them to return to her the check for $550 which she had signed and delivered to the said agent. They told her to come up to the office on Monday morning and they would fix it up for her satisfactorily. She then told them that she had no way to get to the office except on a street car and that she was not able to get on a street car by herself and that she had no one to go with her. Thereupon the agents told her that they would send out to her house on the next afternoon for her and would fix the matter up alright and that she would have no further trouble about it. That she waited for them to send for her and they did not come and she then carried the contract to a friend of hers, Mr. Houston, who was a lawyer and he told her he would look after it for her.

It appears that Mr. Houston was in poor health and that some time thereafter died without taking any action on behalf of the complainant to recover the money paid by her. In the meantime, by reason of other transactions of like manner carried on by said agents, they were arrested and confined in the County jail but were released upon refunding the amounts obtained from other parties who had made complaints to the Attorney-General. The Attorney-General had no knowledge of the transaction with the complainant and the complainant did not learn of the arrest of said agents until after they had been released and left the state.

The defendant admits that it employed the said agents to sell the lots in said subdivision and there is filed in evidence the written contract entered into by the defendant with said real estate agents.

By the terms of the original contract, said agents are authorized to sell the lots in said subdivision on terms of cash and deferred payments and we quote from the contract as follows:

"To offer said unsold lots of said Poplar Terrace subdivision on terms of cash and deferred payments, said deferred payments to be secured by deed of trust on the lot or lots sold, with notes bearing six per centum per annum interest and maturing within sixty months from the date of conveyance."

By the amended contract, the net list price for which said lots are to be sold is fixed and stipulated and the price fixed for the

lot contracted to complainant is $900 if sold on deferred payments or if sold for cash, $850.

It is further agreed in the amended contract that of the cash received by the agents for each sale made, that the agents shall receive all of the sale price in excess of the net list price fixed in said amended contract and that if the cash received for the sale of any particular lot is insufficient to pay the agents' compensation, of all of the sale price in excess of the net list price, that the balance due the agents out of said excess shall be paid to the agents by transferring to them deferred monthly payment notes in an amount equal to their compensation.

The contract also stipulates that the defendant is the owner in fee of the lots in said subdivision and that it has employed the said agents for the purpose of selling said lots and gives to the agents an exclusive agency for the sale of said lots. The defendant also agrees by the terms of the contract to furnish for examination abstracts of title, taxes, and judgments, or in lieu thereof, insurance policies guaranteeing the title to said lots, and to convey said lots to any, all cash purchaser by warranty deed, with merchantable title, free from all encumbrances whatsoever.

And it also agrees to furnish for the use of the agents in the erection of a pavilion and other purposes in connection with the selling plan, one of the lots of said subdivision, to repair the streets running through said subivision, and to clean the lots of weeds and rubbish in order to put the subdivision in a saleable condition and neat appearance. It is also provided in the contract that prospective purchasers are to be entertained at the pavilion with free lunches and that during the course of the lunches or after lectures are to be addressed to the prospective purchasers, giving them information concerning the civic growth and development of the city of Memphis and other large cities, with statistical facts regarding the population, growth, climate, and living conditions. And it is stated in the contract that the object of the subject selected for said lecture is to be the cultivation of faith in the future and progress of Memphis and the stimulation of civic spirit and focussing of attention to the advantages of the selection of said subdivision as a home community.

After said contract was entered into by the defendant and its said agents, the defendant put the said agents in possession of said subdivision and permitted them to erect thereon a pavilion and at the entrance of the subdivision there was erected a sign in the following words:

"THIS SUBDIVISION BEING DEVELOPED BY MARTIN-CRAIG & COMPANY, FARNSWORTH BUILDING."

It is insisted by the defendant in the assignments of error that there was no evidence on which the decree of the lower court could be based and that there was no finding of the jury on any of the issues submitted to sustain the decree but there is no assignment of error made in this court to the effect that there was no evidence to sustain the findings of fact by the jury, upon the issues submitted, or that the Chancellor was in error in directing the jury upon the proof, to answer the issues of fact submitted, as heretofore set out.

It is insisted by the defendant that the lower court erred in decreeing that the representations made by defendant's agents were within the apparent scope of said agents' authority.

We are of the opinion from the proof of the record that defendant's agents were acting within the general scope of their authority in offering for sale and in selling and entering into contracts for the sale of the lots in said subdivision. It appears undisputed that under and by the terms of the contract entered into by the defendant and said agents that the agents were authorized to sell the lots, both for cash and for part cash and deferred payments. Therefore defendant's agents were acting within the general scope of their authority in contracting for the sale of one of said lots to the complainant.

It appears from the verdict of the jury upon issue No. 1 that defendant's agents represented to complainant that the total price to be paid for the lot contracted to her was $550 and obtained her signature to the contract upon the faith of that representation. It also appears from the verdict of the jury on issue No. 3 that defendant's agents received from the complainant the sum of $550 in payment for said lot.

It also appears undisputed that the complainant did not receive a warranty deed from the defendant for said lot and that the money paid by her to defendant's agents was not refunded to her.

We think that under the proof of the record that the defendant's agents were acting within the general scope of the authority with which defendant had clothed them in contracting for the sale of said lot to complainant and that it matters not, in so far as the defendant's liability to the complainant is concerned, that its agents acted contrary to defendant's instructions, as to the price. 21 R. C. L., page 904.

It appears from the uncontradicted evidence and the findings by the jury upon the issues submitted, that the complainant understood that the total price which she was to pay for the lot was $550 and that immediately after she learned that the paper signed

by her stipulated that she was to pay $1450, that she rescinded the written contract and demanded a return of the money paid by her, which was refused. We think that under the uncontradicted proof that complainant was entitled to rescind the contract either, upon the ground of fraud or mistake, and have the money paid by her refunded to her and that the defendant is liable for the acts of its agents in receiving said money. And that in receiving said money, the defendant's agents were acting within the general scope of their authority. Franklin v. Ezell (1851), 1 Sneed, 496; Hampton v. Hancock (1914), 4 Higgins, 419; Gaughton v. Stinespring (1915), 132 Tenn., 636; Stone v. Kennell (1916), 7 Higgins, 519; Ellis v. Bruce (1927), 5 Tenn. App., 344.

Mechem on Agency (2 Ed.), vol. 2, p. 1563, as follows:

"The principal may, either expressly or by implication, put the agent in such a position, or charge him with such duties, that the making of representations will fall within the scope of his authority, as where, expressly or by implication, he refers to the agent for information, or authorized him to do acts to which the making of representations is a necessary or a usual incident.

"Where the principal thus authorizes the making of representations, it may be proved or conceded that he intended the agent to make only fair and honest ones. But a power to make representations, although fair and honest ones only were intended or directed, involves the possibility of the making of false and fraudulent ones; and if the agent in such a case, while acting in the course of the principal's business, and for the purpose of promoting the principal's objects, and not those of the agent only, makes false or fraudulent representations concerning the subject matter of his agency, not so extravagant, unreasonable or unrelated that a reasonably prudent man would not rely upon them, the principal will be responsible for them."

It is insisted on behalf of the defendant that in making the contract of sale with the complainant, that its agents were not acting within the scope of the authority given them, because they were not authorized to sell the particular lot in question for less than $900 and were not authorized to contract for a resale of the lot for complainant. We cannot agree with learned counsel for defendant that the acts of the agents in contracting for a sale of said lot at a less price, than that stipulated in the contract with the agent, was not within the general scope of the agents' authority, and we find nothing in the record to indicate that the complainant knew or had any information of the net price fixed by defendant for said lot. In our view of the case it is not necessary to determine whether or not the agreement on the part of the agents to resell the lot at a profit was within the general scope

of their authority for we are of the opinion that when the complainant discovered that the contract stipulated she was to pay a total price of $1450 instead of a total price of $550, as she understood, that she was entitled to have the contract rescinded and the money paid by her refunded.

It is also insisted on behalf of defendant that there is no proof in the record that complainant knew that Martin-Craig & Co. were acting as agents or that they disclosed to her that the defendant was their principal and that complainant was not aware of any act of the defendant that would lead her to believe that said agents were authorized to make the alleged contract with her and that therefore the defendant is not liable for the act of its agents and that the Chancellor was in error in decreeing the agents were acting within the apparent scope of their authority. In our view of the case, we think the defendant was liable whether the agents disclosed to complainant that they were acting for it as principal or not for the act of the agents within the general scope of their authority is, as a matter of law, the act of the principal, whether the principal is disclosed or not. In our opinion the lower court has reached the correct result in this case and it follows that the judgment is affirmed and a decree will be entered here in favor of complainant for the amount of the judgment below with interest from the date of rendition and the costs of the lower court and costs of the appeal against defendant and its surety upon the appeal bond.

Senter and Heiskell, JJ., concur.