Kennedy R. MAXWELL et al., Appellants,

v.

LAND DEVELOPERS, INC., Appellees.

Court of Appeals of Tennessee,
Western Section.

Feb. 15, 1972.

Rehearing Denied March 8, 1972.

Certiorari Denied by Supreme Court
Aug. 21, 1972.

Frederick D. McDonald, Knoxville, for appellants.

Frank B. Bird and Robert N. Navratil, Bird, Navratil & Ballard, Maryville, for appellee Land Developers, Inc.

William B. Felknor, Felknor, Young, Paine & DeLozier, Maryville, for appellee Tipton Investments, Inc.

MATHERNE, Judge.

The complainants, owners of certain tracts of land in Mimosa Heights, Blount County, Tennessee, appeal from a decree of the Chancellor dismissing their bill wherein they claim the defendants' land in Mimosa Heights should be subjected to the same restrictions set out in the deeds to complainants, even though the deeds to the defendants do not contain the restrictions sought to be enforced.

By ten assignments of error the complainants raise the following basic issues: (1) The Chancellor erred in holding the defendants' land not subject to the same restrictions as was the complainants' land; (2) The Chancellor erred in excluding certain evidence and testimony offered by the complainants; (3) The Chancellor erred in holding the defendants did not have both actual and constructive notice of the restrictions in complainants' deeds, and under the facts were bound thereby; (4) The Chancellor erred in his construction of the verbiage of the restrictions, and its effect under the facts; and (5) The Chancellor erred in failing to permit the complainants to amend their original bill so as to allege constructive fraud.

The trial was before the Chancellor without a jury and comes to this Court for a review *de novo* upon the record as developed in the Chancery Court, with a presumption of the correctness of findings of fact as made by the Chancellor unless the preponderance of the evidence is to the contrary. T.C.A. § 27–303.

The theory of the bill is that the defendants and their predecessors in title at one time owned as "common owners" the whole of the area known as Mimosa Heights, and as such owners conveyed several tracts of land, including the tracts now owned by the complainants, which tracts were restricted to residential or agricultural use only. The bill avers the sales were made by one M. L. Tipton as executor of the estate of W. B. Townsend, deceased; M. L. Tipton and Wife, Helen A. Tipton; and the defendant, Tipton Investments, Inc., a corporation controlled by M. L. Tipton to which M. L. Tipton and wife had conveyed the property. The complainants aver that in selling the various parcels of land from the larger tract M. L. Tipton, acting for the Townsend estate, and later for himself and his wife, and later for the defendant Tipton Investments, Inc., did show purchasers a map outlining lots, parcels, and roads to be constructed in Mimosa

Heights, which parcels include the land now owned by the defendants. The complainants aver the owners of Mimosa Heights from M. L. Tipton to the defendant Tipton Investments, Inc. are "common owners" and as such established a general plan or scheme whereby Mimosa Heights would be an attractive, exclusive, high class residential area, and in pursuance of the plan did assure various purchasers, including some of the complainants, and the predecessors in title of other complainants, that the entire area known as Mimosa Heights would be restricted as set out in complainants' deeds. The complainants allege the defendants are now advertising certain land owned by them for commercial purposes, and seek an injunction prohibiting that use of the land now owned by the defendants and constituting a part of Mimosa Heights.

The defendants by answer claim their deeds contain no restrictions as to the use of the land; they are not bound by the restrictions in complainants' deeds; and the complainants are barred by the statute of frauds, the statutes of limitations, and laches. The answers deny the land owned by the defendants is a part of Mimosa Heights; by stipulation, however, the defendants admit the land owned by them and in controversy is a part of the area known as Mimosa Heights.

Only one witness, complainant Juanita Belleville, testified. This witness offered to testify that M. L. Tipton represented to the witness that the entire area known as Mimosa Heights would be subjected to the same restrictions, and that she and her husband purchased in reliance on those representations. The testimony was excluded as being in violation of the parol evidence rule. Some seven or eight other parties were in court prepared to so testify; the complainants offered certain depositions of the officials of the defendant corporations, and others, and exhibits bearing upon the matter. All this evidence was excluded by the Chancellor and the complainants were allowed to preserve the evidence for the record by filing the depositions and exhibits, and by filing affidavits of the proposed witnesses as to the contents of their testimony. The record reveals there was no recorded plat of Mimosa Heights, and no recorded restrictions as applicable to that area.

We will first consider the restrictions as inserted in the deeds of the complainants, and determine if the parol evidence offered in relation thereto is or is not admissible. As related to this controversy, the restrictions provide in part as follows:

"However, this conveyance is made and accepted upon each and all of the stipulations, restrictions and conditions hereinafter set forth, which are hereby made covenants running with the land and which shall apply to and be binding upon the purchasers, their heirs, representatives, successors and assigns, *as well as between the owners of tracts or parcels of land in Mimosa Heights, acquired under similar restrictions, to the end that the general uniform plan for a highclass residential suburb may be adherred to and be enforced by the owners of said tracts.*" (Emphasis added)

[Then follows eight specific restrictions to residential or agricultural use only with restriction No. 6 specifically providing: "6. No public or commercial business of any kind shall be conducted upon said premises or any part thereof"]

"These covenants and restrictions are to run with the land and shall be binding on the grantee and all persons claiming under them until January 1, 1990, at which time said covenants shall terminate. If the grantee hereto, or his heirs, executors, administrators or assigns, shall violate or attempt to violate any of the covenants or restrictions herein, *it shall be lawful for any other person or*

*persons owning lots in said development, which were acquired under similar restrictions,* to prosecute any proceedings at law, or in equity, against the person or persons violating or attempting to violate any such covenant or restriction, either to prevent him or them from doing so, or to recover damages or other dues for such violations. Any invalidation of any one of these covenants by judgments of Court order shall in no wise affect any of the other provisions, which shall remain in full force and effect." (Emphasis added)

We hold the foregoing underlined provisions to be ambiguous. The words "acquired under similar restrictions" could mean the restrictions could be slightly varied as time went on and still be enforceable; for example, the original restriction No. 4 provided no residence costing less than $6,500.00 could be constructed, but this amount was increased over the years to $15,000.00. The complainants insist this is the meaning of the term quoted. The quoted provision could mean, as insisted by the defendants, that the grantor thereby reserved the right to sell other lots within Mimosa Heights without any restrictions.

The words "to the end that the general uniform plan for a highclass residential suburb may be adherred to and enforced by the owners of said tracts" would indicate there was a general plan applicable to all tracts in Mimosa Heights. These words would also indicate the owners of all tracts in Mimosa Heights could enforce the general plan.

There is also considerable question as to the meaning of the word "suburb" and the word "development." A "highclass residential suburb" could include structures other than dwellings; it could be limited to dwellings, or it could include schools and churches but not include commercial or industrial projects. The word "suburb" is further confused by referring to the area

as a "development" in the second paragraph where the right of enforcement is attempted to be set out. The word "development" could include almost any project. The limitations of the right of enforcement to those persons owning lots in said development "which were acquired under similar restrictions" does not clarify the meaning, but merely reasserts that ambiguous designation.

With the ambiguity thus established, the issue is whether parol evidence can be admitted to show the true intention of the parties. If the issue were between the original buyer and seller, or between a grantee of the buyer and the original seller, or between two grantees with the same restrictions in their respective deeds, parol evidence would be admissible. Ridley v. Haiman (1932) 164 Tenn. 239, 47 S.W.2d 750, citing: Laughlin v. Wagner (1922) 146 Tenn. 647, 244 S.W. 475. In the situation at bar, we do not have those facts; but rather, we have a grantee with restrictions attempting to enforce those restrictions against a grantee with no restrictions. The only way parol evidence would be admissible under these facts would be to base its introduction upon alleged inducing misrepresentations (fraud), accident or mistake. Samuel v. King (1929) 158 Tenn. 546, 14 S.W.2d 963; Ellis v. Bruce (1927) 5 Tenn.App. 344. We will now consider that aspect of the lawsuit, looking first to the notice or knowledge chargeable to the two corporate defendants.

M. L. Tipton and wife, Helen A. Tipton, by deed dated November 3, 1952, recorded in Deed Book 176, page 312, Register's Office of Blount County, Tennessee, conveyed to Tipton Investments, Inc. a 20 acre tract and a 72 acre tract located in the 11th Civil District of Blount County, less and excepting eighteen tracts as therein set out. Seventeen of these excepted tracts are conveyances to other parties, and each deed contains the restrictions as heretofore set out; the eighteenth excepted tract was

reserved for a new highway. The deed to Tipton Investments, Inc. refers to each of the seventeen prior conveyances by the parties grantor and grantee, the number of acres, date, and the recording data. The deed to Tipton Investments, Inc. is a regular warranty deed, and it does not contain the above quoted restrictions which were placed in the seventeen prior conveyances.

■ In the case at bar, the complainants are grantees who attempt to enforce notice of restrictions in their deeds as against the unrestricted conveyances to the defendants, when the restrictions relied upon are ambiguous as to their application to the defendants' land. We hold the land of the defendants cannot under these circumstances be held subject to the restrictions in the complainants' deeds by constructive notice only. This would have to be the result because the defendants, after reading the recorded restrictions in the complainants' deeds, could have interpreted them as authorizing an unrestricted sale of the remainder of the land.

■ If, however, the seventeen previously executed deeds contained restrictions inserted for the purpose of carrying out a general plan of development of the entire tract, including the remainder thereof retained by the grantor, and the various grantees relied upon this general plan of development and purchased in reliance on the restrictions being made applicable to the entire tract, any party who purchased the remainder of the tract with *actual* knowledge of the general plan of development, and the prior purchases made in reliance thereon, would take the land so purchased subject to those restrictions. The remainder of the tract so purchased with actual knowledge would be subject to the restrictions even though no mention thereof was made in the deed. We therefore conclude the Chancellor erred in excluding the evidence offered if that testimony and evidence would tend to prove the above

stated actual knowledge in the two corporate defendants.

■ Evidence excluded by the Chancellor would tend to establish that M. L. Tipton was, at the time he and his wife conveyed to Tipton Investments, Inc., the president of that grantee corporation. If so, the grantee Tipton Investments, Inc. is charged with actual knowledge of the restrictions placed in the seventeen prior conveyances, and also of any representations made by M. L. Tipton to those purchasers and their reliance thereon. 19 C. J.S. Corporations §§ 1078, 1081. See and compare: Union Bank v. Campbell (1843) 23 Tenn. 394; Smith v. Mercantile Bank (1915) 132 Tenn. 147, 177 S.W. 72; People's Bank & Trust Co. v. Potter et al. (1928) 156 Tenn. 649, 4 S.W.2d 341; Barry v. Hensley et al. (1936) 170 Tenn. 598, 98 S.W.2d 102; State ex rel. Clarke v. Ripley Savings Bank (1941) 25 Tenn.App. 490, 160 S.W.2d 189.

Other proof would reveal that Tipton Investments, Inc. did convey from its tracts purchased from M. L. Tipton, ex ux., several tracts of land; and each deed contained the restrictions heretofore set out. Each deed was signed by M. L. Tipton, President on behalf of the corporation. Excluded evidence would tend to prove M. L. Tipton made representations to these purchasers that the entire area would be so restricted and the purchasers relied thereon.

M. L. Tipton was killed in an airplane crash, and M. A. Tipton became the president of Tipton Investments, Inc. On February 24, 1966, M. A. Tipton did as president of Tipton Investments, Inc. execute two deeds conveying a portion of Mimosa Heights, which deeds contain the restrictions referred to.

Thereafter, the defendant Tipton Investments, Inc. by deeds dated February 28, 1968, and April 1, 1968, conveyed to the

defendant Land Developers, Inc., 38.776 acres, and 6 acres respectively, each deed reciting the conveyance was a part only of the land purchased from M. L. Tipton, ex ux. as recorded in Deed Book 176, page 312, Register's Office, Blount County, Tennessee. Each of these deeds contain a course and distance description of the land conveyed, which descriptions were apparently taken from a survey by Frantz G. Gregory, dated January 27, 1968. Each deed is a regular warranty deed and does not contain the restrictions placed in the other deeds as herein noted. Each deed was executed by M. A. Tipton as president of Tipton Investments, Inc. As heretofore noted, the defendants admit the property thus conveyed is within the area known and referred to as Mimosa Heights. This is the property now being offered for sale as commercial property.

As appears from the excluded depositions of O. H. Reynolds and M. A. Tipton, both depositions being offered by the complainants, the common stock of Land Developers, Inc. is owned one-third each by O. H. Reynolds, M. A. Tipton and Harold Tipton, which three individuals also constitute the board of directors of that corporation. O. H. Reynolds is the president and M. A. Tipton is the vice-president and secretary of Land Developers, Inc.

■ Under the facts above related, we hold the defendant Land Developers, Inc. took the land under its deed from Tipton Investments, Inc. with actual notice of the restrictions inserted in all prior deeds conveying tracts in Mimosa Heights, and the representations made and relied on by the purchasers. Under the authorities heretofore cited, the corporate entity Land Developers, Inc. cannot deny the actual notice possessed by its grantor Tipton Investments, Inc. because of the common officer, stockholder and board member, M. A. Tipton. To hold otherwise would be to set the stage for considerable chicanery by the mere dropping of a corporate veil so as to isolate the corporate entity from the knowledge possessed by its corporate grantor (Tipton Investments, Inc.) whose president is also the one-third owner, vice-president and board member of the grantee corporation.

Having established that under the proof tendered by the complainants and rejected by the Chancellor, the two corporate defendants could be charged with actual notice of the restrictions contained in all prior conveyances of other property constituting a part of Mimosa Heights, and the representations made and relied on by the purchasers, the question arises as to the effect of this notice under the issues of this lawsuit. The question brings to the forefront the issue of whether it was necessary for the complainants to amend their original bill in order to charge constructive fraud; and, if so, did the Chancellor err in refusing the amendment?

■ In considering the issue of fraud, the ambiguities contained in the restrictions would be chargeable to the grantors because the grantees could interpret the restrictions as being in accordance with the representations made by the grantors that the entire area known as Mimosa Heights would be so restricted. The grantors could have used more specific language to state expressly the restrictions applied only to the lots conveyed and not to any other portion of Mimosa Heights. The failure to so clearly state, and the use of the ambiguous language, served to compound the fraud.

■ "Constructive frauds are acts, statements or omissions, which operate as virtual frauds on individuals, or which, if generally permitted, would be prejudicial to the public welfare, and are not clearly resolvable into mere accident or mistake, and yet may have been unconnected with any selfish evil design, or may amount, in the opinion of the person chargeable therewith, to nothing more than what is justifiable or

allowable." Gibson's Suits in Chancery, 5th Ed., Vol. II, § 982, p. 217. Constructive fraud may be established where there is a breach of legal or equitable duty, whether or not fraudulent intent be present. Bank of Blount County v. Dunn (1929) 10 Tenn.App. 95.

There is considerable discussion as to whether the complainants offered to amend their bill so as to allege constructive fraud. On the first day of the trial, the Chancellor directed more than one inquiry to complainants' counsel whether or not the complainants relied upon fraud. Counsel for the complainants answered in part as follows:

"I don't think I'd term (it) fraud—as a willful wrongdoing—that at the time these properties were sold there was an intent to cheat these people. We don't intend that. But there were representations made to them as to—and I suppose in that sense of the word, you can say it's a contract, that the entire plat would contain these restrictions."

The Chancellor then concluded: " * * * I think the only thing that really is clear is that it's not an action for fraud."

■ A study and weighing of the above quoted statement by the counsel for the complainants, along with the entire record, clearly establishes to this Court that the complainants did not rely upon *actual* fraud; the complainants did however rely upon constructive fraud wherein they relied upon certain representations that the restrictions would be placed against the entire area known as Mimosa Heights. By the above statement counsel did not waive the right of the complainants to rely upon constructive fraud.

On the second day of the trial, the Chancellor in discussion with all counsel stated he thought the defendants did exactly what they intended to do; that is, they sold some lots restricted and some unrestricted, and in the absence of fraud the acts could not be deemed wrongful as against a subsequent purchaser. The Chancellor stated:

"But in any event, I don't think the pleadings in this case raise that issue. There is no charge of fraud either actual or constructive in this bill. And until and unless that's done, I don't think we've got any possibility of going around the rule. For that reason I'll overrule again your request Mr. McDonald, that you be allowed to put this evidence in."

Whereupon after excepting to the Chancellor's ruling, the complainants' counsel stated:

"If it please the Court, perhaps, in view of the Court's ruling with which we respectfully disagree with, we would ask permission to be permitted to amend to charge constructive fraud in this case, if that's what it amounts to. Our people were told that this was going to (be) a restricted subdivision."

The Chancellor inquired if that was a motion, and was told it was. Thereupon counsel for the defendants and the complainants argued the motion, and the Chancellor denied the motion to amend on the ground the motion came too late.

■ We hold, under the facts of the entire record, the Chancellor erred in refusing the amendment. The chancery court may permit amendments of a bill at any stage of the cause, even after argument of the merits, if it appears that justice cannot be fully done without it. T.C.A. § 21–109. The Chancellor stated, as above quoted, the evidence offered could not come in unless there was a charge of fraud. When the amendment was offered to charge constructive fraud, the Chancellor held it came too late. We adhere to the rule that

the allowance of an amendment to the bill after answer is filed lies within the sound discretion of the Chancellor. Phoenix Ins. Co. v. Jordan (1944) 28 Tenn.App. 11, 184 S.W.2d 721; T.C.A. § 21–109. We also recognize that under the statutes and practice of this State amendments are liberally allowed where necessary to reach the merits of the case. Patton v. Dixon (1900) 105 Tenn. 97, 58 S.W. 299. Under the facts we find the amendment to charge constructive fraud would not be repugnant to the original bill, nor would it have altered that bill. The amendment would have merely clarified and made more explicit the allegations of representations relied upon by the complainants and how those representations are chargeable to the defendants. The proof excluded tends to place full knowledge of all these facts in the two defendant corporations and would not constitute surprise to those defendants. At the stage of the proceedings when the amendment was offered, it was apparent that complainants' claim was based upon constructive fraud; the admissibility of all proof tendered was dependent upon this construction of the complainants' bill. The proof tendered and rejected does tend to establish constructive fraud.

█ It is true that fraud cannot be alleged in general terms, but the particular facts constituting fraud must be set out. Gernt v. Cusack (1900) 106 Tenn. 141, 59 S.W. 335. It suffices, however, if the facts charged in a bill constitute fraud, they need not be expressly so characterized, nor is it necessary to use the word "fraud." Shepherd v. Shepherd (1873) 59 Tenn. 275, 12 Heisk. 275; Sullivan v. Farnsworth (1915) 132 Tenn. 691, 179 S. W. 317. We feel justice dictates that if the Chancellor felt it necessary to more particularly allege constructive fraud than was accomplished in the original bill, he should have allowed the amendment offered.

We will not at this time pass on the issues of laches and the statute of limitations because the full proof will have to be presented on the remand, and a decision now on those subjects would be premature.

█ The defendants insist that to allow the parol testimony as tendered by the complainants would create an estate in land by parol and be violative of the statute of frauds. This issue has been settled to the contrary by the case of Ridley v. Haiman, supra, wherein the Court overruled Emory v. Sweat (1927) 9 Tenn.App. 167. The *Ridley* case was also followed on the point in Owenby v. Boring (1954) 38 Tenn.App. 540, 276 S.W.2d 757. We therefore hold the proof tendered by the complainants cannot be rejected as in violation of the statute of frauds.

It results the Chancellor is reversed in his refusing to allow the complainants to amend the bill to more particularly allege facts constituting constructive fraud, and this cause is remanded to the Chancery Court of Blount County, Tennessee for the allowance of that amendment and a new trial. The defendants may offer such additional defenses in their answer as deemed necessary. Assignments of Error II, III, IV, and V are also sustained and on the new trial, after amendment of the bill as herein contemplated, the evidence offered will not be excluded on the basis as in the first trial applied.

In view of the fact the determinative error committed by the Chancellor was the disallowance of the amendment to the bill, we recognize the rule that amendments may be allowed under such conditions as the court deems appropriate, and tax the accumulated costs in the Chancery Court and in this Court one-half against the complainants, and one-half against the two corporate defendants. The cost of the new trial will abide the results thereof.

CARNEY, P. J., and NEARN, J., concur.

777

## ON PETITION TO REHEAR

MATHERNE, Judge.

The defendants by Petition to Rehear question the conclusions of law made by the Court; and infer an inability to understand this Court's decision in the matter. Accepting the Petition as honestly filed for the reasons stated, we observe:

Counsel rely upon their interpretation of the case of Litterer v. Wright (1924) 151 Tenn. 210, 268 S.W. 624 as quoted and referred to in Samuel v. King (1929) 158 Tenn. 546, 14 S.W.2d 963, to the effect the complainants can produce parol evidence in this case for the sole purpose of *avoiding* their various deeds. Counsel cite the above decisions as authority that parol evidence cannot be produced by the complainants to show alleged inducing misrepresentations not expressed in their deeds but relied on by the complainants in the consummation of the various purchases made by them.

The paragraph counsel rely upon from the *Litterer* case, quoted in the *Samuel* case, is as follows:

"The fundamental distinction should be kept clearly in mind between the denied right to contradict the terms of the writing, and the recognized right without so doing to resist recovery thereon, *or to rely upon matters unexpressed therein.*" (Emphasis added)

The foregoing rule of law is sound, and has been carefully followed by this Court. Counsel should note the ultimate test is that of contradiction, which is never permitted by parol. There is no attempt by the complainants in this lawsuit to contradict the terms of the written instrument; their complaint is that alleged fraudulent misrepresentations, unexpressed in the written instruments, were made to them, upon which they relied to their detriment. The complainants offer by parol evidence to prove those unexpressed misrepresentations; to show their reliance thereon; to charge the defendants therewith; and to show the resulting damage suffered. The admissibility of parol evidence as offered in this lawsuit is bottomed upon alleged fraud, accident or mistake, and that alone.

We reaffirm our holding, for the reasons stated, that the Chancellor under the record as developed before him should have allowed the amendment to the original bill, because the admissibility of the proof tendered was dependent upon a proper allegation of constructive fraud. When fraud is the issue and proof is at hand which tends to establish the existence of fraud, a court of conscience is extremely adverse to a termination of the proceedings absent an examination of the entire matter.

The Petition to Rehear is dismissed at the cost of the petitioner.

CARNEY, P. J., and NEARN, J., concur.